# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ADVANCED CODING TECHNOLOGIES LLC, | Civil Action No. 2:24-CV-00572-JRG (Lead Case) |
|         Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **ORAL ARGUMENT REQUESTED** |
| APPLE INC., | ██████████████████ |
|         Defendant. | |

## DEFENDANT APPLE INC.'S MOTION TO DISMISS FOR IMPROPER VENUE OR ALTERNATIVELY TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF ISSUES ........................................................................... 2

III.  FACTUAL BACKGROUND .......................................................................... 2

    A.    The Parties ......................................................................................... 2

    B.    ACT's Allegations on Venue .............................................................. 4

    C.    Apple's Relationship with Best Buy .................................................... 5

    D.    The Vast Majority of Apple's and Third-Party Witnesses and Documents Are in California ....................................................................................... 7

IV.   LEGAL STANDARD ................................................................................... 10

V.    ARGUMENT ............................................................................................... 11

    A.    ACT's Consolidated Cases Should Be Dismissed In Their Entirety For Improper Venue ................................................................................... 11

        1.    ACT has not pleaded facts showing any regular and established place of business "of the defendant" in this District ................................... 12

            (a)    Apple does not own or lease any space in Best Buy's stores, or otherwise exercise possession or control over Best Buy's stores ................................................................................... 13

            (b)    Apple does not require its employees to live in the District or to store materials to be distributed or sold within the District ....... 18

            (c)    Apple does not hold out Best Buy's stores as places of business of Apple ............................................................... 19

            (d)    Apple's places of business in other venues differ significantly from Best Buy's stores ............................................ 22

    B.    In the Alternative, ACT's Consolidated Cases Should Be Transferred to the Northern District of California ............................................................. 23

        1.    ACT could have brought this suit in the Northern District of California ....................................................................................... 23

        2.    The Private Interest Factors Weigh Decisively in Favor of Transfer ........ 24

            (a)    The relative ease of access to sources of proof strongly favors transfer ............................................................................... 24

            (b)    Compulsory process over third-party witnesses strongly favors transfer to the Northern District of California ................... 26

            (c)    Cost of attendance for willing witnesses strongly favors transfer ............................................................................... 27

i

      (d)   Any remaining "practical problems" are neutral ...........................28

   3.   Public Factors Weigh Decisively in Favor of Transfer ............................28

      (a)   The local interest factor favors transfer ..........................................28

      (b)   Familiarity with governing law and conflicts of law factors are neutral...................................................................................29

      (c)   The court congestion factor is neutral..........................................30

VI.   CONCLUSION............................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Coding Techs., LLC v. ByteDance Ltd.*,
  No. 22-cv-129 (E.D. Tex. Apr. 29, 2022) (Dkt. 1) ...................................................................3

*AGIS Software Development LLC v. Google LLC*,
  No. 19-cv-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022) .......................21

*AlexSam, Inc. v. Simon Prop. Grp. (Tex.), L.P.*,
  No. 19-cv-331-JRG, 2021 WL 9816147 (E.D. Tex. Aug. 19, 2021) ....................................10

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ("*Apple I*") .................................................................. *passim*

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ("*Apple II*") .......................27, 28

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ......................................................................................26

*AptusTech LLC v. Trimfoot Co.*,
  No. 19-cv-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020).........................19, 20

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) .................................................................................10, 28, 29

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)...................................................................................... *passim*

*In re DISH Network, LLC*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...........................................28, 29

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
  No. 17-cv-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)..............................12

*Fractus, S.A. v. ZTE Corp.*,
  No. 17-cv-00561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) ..............................16

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)...............................................................................................26

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020).......................................................................................11, 15

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................................24

*In re Google*,
  58 F.4th 1379 (Fed. Cir. 2023) ...................................................................................30

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ..................................26

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
  No. 17-cv-1748-DOC, 2018 WL 4963129 (C.D. Cal. June 22, 2018) ..............13, 20

*IOT Innovations LLC v. Monitronics Int'l, Inc.*,
  No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049 (E.D. Tex. Sept. 11, 2023) ......18

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ........................................................... *passim*

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ....................................................................25, 28, 29

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).........................................................................................11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017).................................................................................11, 12, 23

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*,
  No. 22-cv-490-JRG-RSP, 2024 WL 607407 (E.D. Tex. Jan. 4, 2024)..................10

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ............................................................... *passim*

*In re TracFone Wireless, Inc.*,
  848 F. App'x 899 (Fed. Cir. 2021) ...........................................................28

*In re TS Tech. USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) (en banc)................................................29

*Uniloc USA, Inc. v. Nutanix, Inc.*,
  No. 17-cv-00174-JRG, 2017 WL 11527109 (E.D. Tex. Dec. 6, 2017) . ACT ......18

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")....................................23, 27

*In re Volkswagen Grp. of Am., Inc.*,
  28 F.4th 1203 (Fed. Cir. 2022) .................................................................22

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") .............................10, 23

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018)..................................................................11

**Statutes**

28 U.S.C. § 1391(c) ..................................................................................................11

28 U.S.C. § 1400(b) ........................................................................................ *passim*

28 U.S.C. § 1404(a) ........................................................................................ *passim*

28 U.S.C. § 1406(a) ...............................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(3) ........................................................................................1, 2

Fed. R. Civ. P. 45(c) ..............................................................................................26

## I.    INTRODUCTION

This case should be dismissed in its entirety pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because venue is not proper in the Eastern District of Texas.  Apple neither resides nor maintains a regular and established place of business in the District as required for venue under 28 U.S.C. § 1400(b).  Apple has no offices or stores in the District, and no plaintiff suing Apple for patent infringement has established proper venue in the Eastern District of Texas since 2019 when Apple last had a place of business in the District.

Plaintiff Advanced Coding Technologies LLC's ("ACT") alleged basis for venue in this District relates only to non-party retailer Best Buy, which—unlike Apple—has stores in the Eastern District of Texas.  But Best Buy's stores are places of business of Best Buy, not Apple.  It is well established that the presence of third-party retailers alone in this District does not establish proper venue as to a supplier like Apple.  Apple does not own or lease any space within Best Buy's stores or otherwise exercise possession or control over Best Buy's stores; Apple does not own any merchandise or fixtures within Best Buy's stores; Best Buy sets the price for all Apple merchandise that it sells; and Apple does not advertise Best Buy's stores as places of business of Apple.  In fact, Best Buy can close locations without consulting Apple—and it has.  And while Apple has no more than ten employees who demonstrate and answer questions about Apple's products within Best Buy's stores, such limited actions do not convert Best Buy's stores into places of business of Apple.  Indeed, those Apple employees do not complete any sales transactions or even have access to locked inventory within Best Buy's stores.  Given ACT's deficient venue allegations, the proper remedy is dismissal.

If the Court does not dismiss the case, it should, in the alternative, transfer the case under 28 U.S.C. § 1404(a) to the Northern District of California.  Not only does Apple reside there, but Apple employees with knowledge of the accused functionality and products are in that District,

as are their documentary and electronic records. Likewise, Apple's employees work with California-based employees knowledgeable about the design and development of accused functionality in the chipsets that California-based Broadcom and Qualcomm supply to Apple. None of Apple's or any third-party's sources of proof are in the Eastern District of Texas. Finally, the Northern District of California is convenient for ACT because ACT's managing director, Deepak Sharma—who is also sole owner and CEO of ACT's California-based ultimate parent Anjay Venture Partners, LLC— resides in the Northern District of California.

## II.    STATEMENT OF ISSUES

1.    Whether the Court should dismiss this case under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because ACT has not established that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b).

2.    In the alternative, whether the Court should transfer this case to the Northern District of California for the convenience of the parties and witnesses and in the interests of justice under 28 U.S.C. § 1404(a).

## III.    FACTUAL BACKGROUND

### A.    The Parties

Defendant Apple is a California corporation and is headquartered in Cupertino in the Northern District of California. Dkt. 1 ¶ 2; Ex. A.[1] Apple designs, manufactures, and sells a wide range of consumer products, including the iPhone, iPad, iPod Touch, Apple Watch, and Mac, as well as software and services, including Safari, QuickTime, Apple TV+, iCloud, HTTP Live Streaming and Apple HomeKit Secure Video, which are all accused of infringement in this litigation. *See* Dkt. 1 ¶ 22. Apple sells its products through its website, directly to consumers in

---

[1] Unless otherwise noted, citations to docket entries refer to the docket for lead case (No. 2:24-cv-572-JRG) in this consolidated action. Citations to docket entries for the second-filed case, No. 2:24-cv-687-JRG, are indicated by the case number ("-687") preceding the docket number.

Apple Stores, and through third-party retailers and distributors.  Apple has no Apple Stores in this District—and has not had one in the District since 2019.  Decl. of Stephanie Dockendorf ("Dockendorf Decl.") ¶ 14.

ACT is a Texas company with a principal place of business at 104 East Houston Street, Suite 140, Marshall, Texas.  Dkt. 1 ¶ 1.  ACT is owned through a series of entities that trace back to ACT's true owner in the Northern District of California.  ACT's sole managing member is Anjay Technology Partners LLC ("Anjay Technology"), which is also a Texas company with a principal place of business at the same physical location in Marshall as ACT, though in Suite 180.  Exs. B, D.  Anjay Technology's sole managing member, in turn, is Anjay Venture Partners ("Anjay Ventures"), which is a California company located in Cupertino, California.  Exs. D, E.  Mr. Deepak Sharma—the managing director of both ACT and Anjay Technology and the manager and CEO of Anjay Ventures—also resides in Cupertino.  Exs. C, U, V.

ACT had no involvement in the development of the purported inventions claimed in the asserted patents.  *See* Dkts. 1-1 to 1-3.  Instead, ACT was formed on February 15, 2022, Ex. B at 1, and acquired the asserted patents in under two weeks.  Ex. C at 19.  ACT filed its first lawsuit only two months later in this District.  Compl., *Advanced Coding Techs., LLC v. ByteDance Ltd.*, No. 22-cv-129, (E.D. Tex. Apr. 29, 2022) (Dkt. 1).  ACT does not appear to engage in any business related to the asserted patents other than filing lawsuits.

On July 22, 2024, ACT sued Apple, asserting infringement of U.S. Patent Nos. 8,090,025, 9,986,303, and 10,218,995, which relate to video encoding and decoding as purportedly implemented in the AV1 video coding standard.  Dkt. 1 ¶¶ 14-16; *see also* Dkts. 1-1 to 1-3.  On August 20, 2024, ACT filed a second lawsuit against Apple, asserting infringement of U.S. Patent Nos. 9,042,448, 8,230,101, 7,804,891, which relate to, respectively, video

encoding/decoding, technology purportedly implemented in the 5G and Wi-Fi 6[2] standards, and servers for storing and transmitting digital content.  -687 Dkt. 1 ¶¶ 14-16; *see* -687 Dkts. 1-1 to 1-3.  The cases were consolidated on September 5, 2024.  Dkt. 13 at 2-3.

     **B.**     **ACT's Allegations on Venue**

     ACT's identical venue allegations in both complaints identify no physical location within the Eastern District of Texas that is a regular and established place of business of Apple.  *See* Dkt. 1 ¶¶ 2-10; -687 Dkt. 1 ¶¶ 2-10.  Instead, the complaints rely entirely on "Best Buy locations in this District where Apple products are sold directly to customers."  Dkt. 1 ¶ 2; -687 Dkt. 1 ¶ 2.  ACT alleges that "certain Best Buy locations within this District contain Apple Shops," which Apple's website describes as "Apple-designed outlets located within select Apple resellers and other retail stores."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  However, as the complaints recognize, these Apple Shops are part of Best Buy's stores and are not Apple stores.  For example, the complaints quote from Best Buy's website that Apple Shops are "[n]ow open at a Best Buy near you" and that the Apple Shop is "our [*i.e.*, Best Buy's] store-within-a store for all things Apple."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  ACT does not allege that Apple owns or leases any space within Best Buy's stores or otherwise exercises ownership or control over Best Buy stores.  Indeed, Apple does not.

     ACT further alleges that Apple's website states that "[m]any [Apple Shops] are staffed with Apple Solutions Consultants – trained Apple employees who can help you find the best solution."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  According to the complaints, these Apple employees working at Best Buy locations "provide information about Apple's products to prospective customers" and they are "involved in the technology, sales, and marketing of its products."  Dkt. 1 ¶ 10; -687 Dkt. 1 ¶ 10.  ACT does not allege that Apple's employees stock inventory, that they make sales, or that they exercise any control over Apple Shops in Best Buy stores or the Best

---

[2] ACT first identified the Wi-Fi 6 standard in its preliminary infringement contentions.

Buy stores themselves.  Indeed, Apple employees do not.

Finally, ACT alleges that "certain Best Buy locations, including those located in this District, are 'Apple Authorized Service Providers,'" where Apple products can be repaired.  Dkt. 1 ¶ 6; -687 Dkt. 1 ¶ 6.  But as ACT describes, those services are performed by Best Buy employees, called "Geek Squad Agents."  Dkt. 1 ¶ 6; -687 Dkt. 1 ¶ 6.  Both Best Buy and Apple, in fact, reassure customers that these Best Buy employees at Best Buy locations provide Apple-quality repair services.  *See, e.g.*, Dkt. 1 ¶ 6; -687 Dkt. 1 ¶ 6. ("Our Geek Squad® Agents are Apple-trained, so you can trust us with all your Apple devices at any Best Buy store near you."); Dkt. 1 ¶¶ 8-9; -687 Dkt. 1 ¶¶ 8-9 ("[Y]ou get the same professionalism and quality of repair you'd expect from Apple.").

### C.    Apple's Relationship with Best Buy



Apple and Best Buy entered into a ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████.  Ex. F.  Nothing in the █████████████████ provides Apple control over the Best Buy stores or the Apple Shops within them.  *See generally* Exs. F-J.

Apple and Best Buy also entered into an ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████  Ex. G § ███  ACT's venue allegations depend entirely on these ██████ ███████████████████████████  or "Apple Shops" in Best Buy's stores.  *Id.*

As reflected in that ████████████████████████████ and, in practice, Apple Shops are part of Best Buy's stores, and are owned and operated solely by Best Buy.  The Apple Shops provide a dedicated space with Apple's logo and branding on shelving and display cases where Best Buy sells Apple products.  *See* Dockendorf Decl. ¶ 5.  Best Buy determines where the

5

Apple Shop is located within Best Buy's stores.  Dockendorf Decl. ¶ 9; *see* Ex. G §§ ███

████████████████████████████████████████████████████████████████████

████████████████████████.  Best Buy owns all merchandise, demonstration units, and

fixtures in each Apple Shop.  Ex. G § ████████; Ex. F § ██; Dockendorf Decl. ¶¶ 8, 12.  Best

Buy decides what Apple products to order and how to allocate that inventory to individual stores.

Decl. of Jack Leslie ("Leslie Decl.") ¶¶ 3-4; *see also* Ex. F § █.  Title passes to Best Buy upon

shipment from Apple's shipping location.  Leslie Decl. ¶ 5; Ex. F § ███.  Best Buy also sets the

prices for the products sold in the Apple Shop, manages the inventory, establishes the hours of

operation, and staffs its store (including the Apple Shop) with Best Buy employees who

complete all sales transactions.  Decl. of Stephanie Calhoun Jemmings ("Calhoun Jemmings

Decl.") ¶¶ 9-10, 12; Dockendorf Decl. ¶ 12; *see also* Ex. G § ███.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████.  *See, e.g.*, Ex. G

§§ █████.  Best Buy reviews and authorizes any contractor who installs the fixtures for the

Apple Shops in Best Buy's stores.  *Id.* ¶ 10.  Best Buy ███████████████████████████

████████████████████████████, Ex. G § █████ and Best Buy can close its stores,

including those with Apple Shops, without consulting Apple—as it has done dozens of times in

the past three years.  Dockendorf Decl. ¶ 13.

Ten Apple employees work within Best Buy's stores in the Eastern District of Texas,

with no more than two Apple employees at any particular Best Buy Location.  Calhoun

Jemmings Decl. ¶ 5.  They are not present at all times that Best Buy's stores are open; in fact,

most work only Friday through Sunday.  *Id.* ¶ 6.  None of these Apple employees has a role in

the management or operation of Best Buy's stores.  *Id.* ¶ 4.  Nor do they complete any sales

transactions, or have access to the store's cash registers, locked inventory, or Best Buy's

computer systems for checking inventory.  *Id*. ¶¶ 9-10.  Instead, these Apple employees engage with Best Buy's employees and customers to educate them about Apple's products, advocate for Apple's brand, and help customers find the Apple product that best suits their needs.  *Id.* ¶ 7; *see* Ex. J § ██ .  Best Buy can remove Apple's employees from its stores without consulting Apple. Calhoun Jemmings Decl.¶ 12.  And Apple also does not require its employees to live within the District, and indeed, some travel outside the District for their job.

### D.  The Vast Majority of Apple's and Third-Party Witnesses and Documents Are in California

The Apple employees and third-party employees most knowledgeable about each of the accused functionalities implicated by ACT's infringement allegations are located in California. Specifically, the Apple technical witnesses knowledgeable about the video decoding functionality implemented in the AV1 video coding standard at issue in four of the six asserted patents, are located primarily in the Northern District of California and elsewhere in California:

- Guy Cote 

    Decl. of Guy Cote ("Cote Decl.") ¶¶ 1, 3.

Likewise for the functionality at issue in the fifth patent (the '891 patent), the Apple technical witnesses responsible for integration of the 5G and Wi-Fi 6 technology supplied by Qualcomm and Broadcom and the third-party witnesses knowledgeable about that technology are located primarily in the Northern District of California and elsewhere in California:

- Muthukumaran Dhanapal 

    . Decl. of

7

Muthukumaran Dhanapal ("Dhanapal Decl.") ¶¶ 1, 3.

- Tushar Shah 

. Decl. of Tushar Shah ("Shah Decl.") ¶¶ 1, 3.

- ████████████████████████ California-based employees from Qualcomm, which is headquartered in San Diego and designed and developed the LDPC functionality in the Qualcomm baseband chipsets. Dhanapal Decl. ¶ 5; Ex. K.

- ████████████████████████ California-based employees from Broadcom, which is headquartered in the Northern District of California and designed and developed the LDPC functionality in the Broadcom Wi-Fi 6 chipsets. Shah Decl. ¶ 5; Ex. L.

Finally, the Apple technical witnesses knowledgeable about the functionality at issue in ACT's sixth patent (the '101 patent) are located primarily in the Northern District of California and elsewhere in California:

- Keith Rauenbuehler 

. Decl. of Keith Rauenbuehler ("Rauenbuehler Decl.") ¶¶ 1, 3.

- Leland Wallace ████████████████████████

████████████████████████

████████████████████████

████████████████████████. Decl. of Leland Wallace ("Wallace Decl.") ¶¶ 1, 3.

- Roger Pantos ████████████████████████████████████

████████████████████████████████████████████████

████████████. Decl. of Roger Pantos ("Pantos Decl.") ¶¶ 1, 3.

Members of each of these technical teams working on the accused functionality are primarily located in Cupertino and elsewhere in California. Cote Decl. ¶ 4; Dhanapal Decl. ¶ 4; Shah Decl. ¶ 4; Rauenbuehler Decl. ¶ 4; Wallace Decl. ¶ 4; Pantos Decl. ¶ 4. Critically, Apple's investigation has not identified any Apple or third-party technical witnesses in the Eastern District of Texas—or even any current team members of the relevant technical teams in Texas.[3] Cote Decl. ¶¶ 4-6; Dhanapal Decl. ¶¶ 4-6; Shah Decl. ¶¶ 4, 6; Rauenbuehler Decl. ¶¶ 4-6; Wallace Decl. ¶¶ 4-6; Pantos Decl. ¶¶ 4, 6.



████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████. Cote Decl. ¶¶ 4, 6; Dhanapal Decl. ¶¶ 4, 6; Shah Decl. ¶¶ 4, 6; Rauenbuehler Decl. ¶¶ 4, 6; Wallace Decl. ¶¶ 4, 6; Pantos Decl. ¶¶ 4, 6. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████. Cote Decl. ¶¶ 4-6; Dhanapal Decl. ¶¶ 4-6; Shah Decl. ¶¶ 4, 6; Rauenbuehler Decl. ¶¶ 4-6; Wallace Decl. ¶¶ 4-6; Pantos Decl. ¶¶ 4-6.

The Apple witnesses knowledgeable about Apple's patent licensing practices—████████

████████████████████████████████████████████

---

[3] ████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

████████████████—are located in and around Cupertino, California (and not in Texas).

Decl. of Brian Ankenbrandt ("Ankenbrandt Decl.") ¶¶ 1, 4-6, 9. ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████. *Id.* ¶¶ 7-8.

## IV.    LEGAL STANDARD

On a motion to dismiss for improper venue, "the burden of sustaining venue lies with the plaintiff." *Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 22-cv-490-JRG-RSP, 2024 WL 607407, at *3 (E.D. Tex. Jan. 4, 2024) (quotation omitted). "A plaintiff may carry its burden by presenting facts, taken as true, that establish venue." *Id.* "In determining whether venue is proper, the Court may look beyond the complaint to evidence submitted by the parties." *Id.* (quotation omitted). While the Court must accept well-pleaded allegations as true and resolve all conflicts in favor of the plaintiff, the Court "need not credit conclusory allegations." *AlexSam, Inc. v. Simon Prop. Grp. (Tex.), L.P.*, No. 19-cv-331-JRG, 2021 WL 9816147, at *1 (E.D. Tex. Aug. 19, 2021). "When unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or declaration trumps the allegation." *Id.* (quotation omitted).

To succeed on a motion for change of venue for convenience, the moving party "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (alteration in quote); *see also In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (placing burden on movant "to 'adduce evidence and arguments'" supporting transfer) (quotation omitted). Though the district court has discretion to grant or deny the motion to transfer, its analysis must be "rooted in record evidence." *In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023); *see also Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988).

## V.    ARGUMENT

### A.    ACT's Consolidated Cases Should Be Dismissed In Their Entirety For Improper Venue

The "sole and exclusive provision controlling venue in patent infringement actions" is 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017). Section 1400(b) is more restrictive than the general venue provisions of 28 U.S.C. § 1391(c) and limits venue in patent cases to "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Under § 1400(b), a defendant "resides" only in its state of incorporation. *TC Heartland*, 581 U.S. at 268. As ACT acknowledges (Dkt. 1 ¶ 2; -687 Dkt. 1 ¶ 2), Apple is a California corporation and does not reside in the Eastern District of Texas. ACT therefore relies exclusively on the second prong of § 1400(b) for venue—Apple's purported "regular and established place of business."

The Federal Circuit applies "three general requirements" relevant to whether an entity has a regular and established place of business: "(1) there must a be physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). It is the plaintiff's burden to show that these requirements are met. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). And "the Supreme Court has cautioned against a broad reading of the venue statute" so as to give effect to "the clear intent of Congress in enacting the statute to restrict venue." *In re Google LLC*, 949 F.3d 1338, 1346-47 (Fed. Cir. 2020) (collecting cases). If any of these three requirements for demonstrating a regular and established place of business of the defendant is not met, "venue is improper under § 1400(b)." *Cray*, 871 F.3d at 1360.

### 1.    ACT has not pleaded facts showing any regular and established place of business "of the defendant" in this District

Apple has no regular and established place of business in the Eastern District of Texas, and ACT has not alleged facts sufficient to carry its burden on this issue.  The statutory requirement that "'the regular and established place of business' must be 'the place of the defendant'" is dispositive.  *Cray*, 871 F.3d at 1363.

Apple has not had any stores in the District for over four years.  Dockendorf Decl. ¶ 14. Neither complaint identifies any place of business of Apple in the District, and instead both rely exclusively on "Best Buy locations in this District" to plead venue.  Dkt. 1 ¶ 2; -687 Dkt. 1 ¶ 2. *See generally* Dkt. 1 ¶¶ 2-10; -687 Dkt. 1 ¶¶ 2-10.  But those are "Best Buy locations"—not Apple locations.  Dkt. 1 ¶ 2; -687 Dkt. 1 ¶ 2.  It is well established that "a distributor's place of business cannot establish venue for its supplier" under § 1400(b), especially where the supplier has no control over the distributor's place of business or within that place the supplier's products are sold.  *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (collecting cases).  Accepting ACT's position that third-party retailers like Best Buy may establish venue for product manufacturers "would largely overturn the decisions in *TC Heartland* and *Cray*, converting the test for venue in patent cases into one similar to the test for personal jurisdiction," *id.* at *3, which is exactly what the Federal Circuit has warned against, *see Cray*, 871 F.3d at 1361 (instructing courts "not to conflate showings that may be sufficient for . . . personal jurisdiction or the general venue statute" with those necessary "to establish proper venue in patent cases.").

The Federal Circuit has provided a non-exhaustive list of "considerations" for evaluating whether a location is "the place of the defendant."  Those considerations include (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on an employee's continued

residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself"; and (4) "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Cray*, 871 F.3d at 1363-64.

These considerations overwhelmingly demonstrate that Best Buy's stores are not places of business of Apple. Indeed, another court has already rejected the basis for ACT's venue allegations—*i.e.*, that Best Buy stores that sold the defendant Samsung's products in a Samsung-branded section of the store qualified as "the place of the defendant." *See Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, No. 17-cv-1748-DOC, 2018 WL 4963129, at *7 (C.D. Cal. June 22, 2018). This Court should reach the same conclusion here.

        (a)    *Apple does not own or lease any space in Best Buy's stores, or otherwise exercise possession or control over Best Buy's stores*

The physical space within Best Buy's stores, including where the accused products are sold, is owned and controlled by Best Buy. Apple does not own or lease space in Best Buy's stores. Dockendorf Decl. ¶ 7. All fixtures and merchandise within those stores are Best Buy's property, and Best Buy controls the process for installing any fixtures in its stores, including the ultimate decision as to where to locate those fixtures within its stores. *Id.* ¶¶ 8-11; Ex. G § ███

███████████████████████████████████████████████████████████████████

███████████████████████████, §§ ████████████████████████████████

██████████████████████████████████, §§ ██████████

██████████████████████████████████████████████████

█████████████████████████████. As a result, Best Buy bears full responsibility for losses within its stores (*e.g.*, theft or personal injury). Dockendorf Decl. ¶ 8;

Ex. G § ██████████; Ex. F § ████████████████████████

████████████████████████.  Because Apple has no ownership or control over Best

Buy's stores, Best Buy can close its stores permanently without consulting Apple, including

those with Apple Shops.  Dockendorf Decl. ¶ 13.  Best Buy has done so dozens of times within

the last three years, including one location (Lufkin) in the District.  *Id.*

Apple also does not exercise control over operations at Best Buy's stores.  Apple does not

manage the inventory within Best Buy's stores.  Leslie Decl. ¶ 3.  When Best Buy orders

Apple's products, Best Buy typically does not identify a particular store to receive that inventory,

and Apple ships its products to one of six Best Buy distribution centers—none of which is

located in this District.  *Id.*  Best Buy—not Apple—is then responsible for getting Apple's

products from its distribution centers to Best Buy's stores in this District.  *Id.*  Even when Best

Buy occasionally asks Apple to ship products to a Best Buy store directly, those shipments are

initiated at Best Buy's request and become Best Buy's property as soon as they leave Apple's

warehouses.  *Id.* ¶¶ 4-5; Ex. F § ███.  Best Buy provides security for its stores.  Dockendorf Decl.

¶ 8.  Best Buy sets the hours of operation for its stores and the prices of the Apple products that it

sells.  *Id.* ¶ 12; Calhoun Jemmings Decl. ¶¶ 9, 12; *see also* Ex. G § ███.  And Apple does not

complete any sales transactions or repair any products at Best Buy's stores.  Calhoun Jemmings

Decl. ¶¶ 9, 11; *see also* Dkt. 1 ¶¶ 6, 8-9 (alleging Apple and Best Buy advertise that Best Buy

employees repair Apple products at Best Buy locations).

ACT alleges that there are "Apple-designed outlets" within Best Buy's stores called

"Apple Shops."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  But those allegations simply refer to the fact that

Apple designs and provides fixtures that third-party retailers can use for displaying Apple's

products within their stores.  For example, Apple has standardized Apple-branded tables and

displays for its products that it provides to third-party retailers.  Dockendorf Decl. ¶¶ 4-5.  Those

Apple-branded fixtures are not specific to Best Buy or any particular Best Buy location.  *Id.* ¶ 4. Apple has requirements for where those Apple-branded fixtures can be installed to ensure that retailers use Apple-branded fixtures in a consistent manner.  *Id.* ¶ 9.  But it is ultimately up to Best Buy to identify a location within its stores to install those fixtures using contractors authorized by Best Buy.  *Id.* ¶¶ 9-10; *see* Ex. G §§ ▬▬.  Once installed, those fixtures are Best Buy's property that Best Buy controls.  Dockendorf Decl. ¶ 8; Ex. G § ▬.  Best Buy ▬▬ ▬▬▬▬▬▬▬▬▬.  Ex. H at ▬▬▬▬▬▬▬▬▬▬▬.  While Apple provides routine maintenance for those fixtures (*e.g.*, to repair a damaged display case), Best Buy requires that Apple use only Best Buy-approved vendors to do that work.  Dockendorf Decl. ¶ 11.  And in any event, such maintenance does not constitute the "conduct of business in the sense of production, storage, transport, and exchange of goods or services" required under the venue statute.  *See Google*, 949 F.3d at 1347.

ACT also alleges that "Apple employees" called "Apple Solutions Consultants" work within Best Buy's stores in the District.  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  But the mere presence of Apple employees within the District does not satisfy the statutory requirements for venue, which focus on control over a physical location, not on who is at that location.  *See Cray*, 871 F.3d at 1363 ("As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee.").  Similarly, this Court recently found that venue was not proper in *4WEB, Inc. v. NuVasive, Inc.*, even though plaintiff 4WEB alleged that defendant NuVasive's employees conducted business "including sales, marketing, sales operations, logistics, regulatory, quality control, research and development (when surgeons are engaged as consultants), training and education and finance" at various hospitals and surgery centers in the district and had to live close enough to commute to those hospitals and surgery centers.  No. 23-cv-00192-JRG, 2024 WL 1932416, at *1-2 (E.D. Tex. May 2, 2024).  The court reasoned that

"NuVasive (1) does not own or lease any place in this District, (2) has not represented that it has

a place of business in this District, and (3) conducts its business in San Diego, California." *Id.* at

*3.  The court further emphasized that plaintiff "fail[ed] to point to any 'place' (*e.g.*, a building, a

storage room, a table, or a leased shelf) in the hospitals, surgery centers, or anywhere else in this

District over which NuVasive exercises possession and control." *Id.* at *4.

Venue is improper here for the same reason as in *4WEB*.  The complaints contain no

allegations that Apple's employees exercise possession or control over Best Buy's stores, and if

anything, the actual role of these employees reinforces Apple's lack of possession or control over

those stores.  *See* Dkt. 1 ¶¶ 3, 7, 10; -687 Dkt. 1 ¶¶ 3, 7, 10.  As an initial matter, currently only

ten Apple employees work within Best Buy's stores in the District—with no more than one or

two Apple employees at any particular Best Buy location.  Calhoun Jemmings Decl. ¶ 5.  Apple

employees are not present at all times that Best Buy's stores are open; in fact, most work only

Friday through Sunday.  *Id.* ¶ 4 (explaining Lead ASCs cover multiple locations), ¶ 5 (explaining

"Specialists" work part-time).  That limited and part-time presence of Apple employees

alongside the larger and permanent presence of Best Buy's own employees underscores that

Apple Shops are not a place of business of Apple.  *See* Calhoun Jemmings Decl. ¶¶ 9-12;

*Fractus, S.A. v. ZTE Corp.*, No. 17-cv-00561-JRG, 2018 WL 11363369, at *2 (E.D. Tex. Sept.

28, 2018) (holding that the presence of two of defendant's employees at a call center three to

four days per week working from a visitor office space "not exclusively used" by defendant did

not make the call center a place of the defendant).  Best Buy has complete control over who can

be present within its stores, and Best Buy has the right to remove Apple's employees from Best

Buy's stores if Best Buy deems it necessary.  Calhoun Jemmings Decl. ¶ 12.

Apple's employees also do not have any role in the operation of Best Buy's stores.

While at Best Buy, Apple's employees provide information about Apple's products to

prospective customers.  Calhoun Jemmings Decl. ¶ 7; *see also* Dkt. 1 ¶ 3 ("Many are staffed with Apple Solutions Consultants – trained Apple employees who can help you find the best solution."); -687 Dkt. 1 ¶ 3.  But Apple's employees are not involved in the management or operation of Best Buy's stores, and they do not exercise any control over Best Buy's employees. Calhoun Jemmings Decl. ¶¶ 4, 8.  Apple's employees do not complete any sale transactions with customers or even have access to cash registers.  *Id.* ¶ 9.  Apple's employees do not manage inventory, set prices for Apple's products, or have access to locked inventory or Best Buy's inventory systems.  *Id.* ¶¶ 9-10.  And Apple's employees do not perform product repairs.  *Id.* ¶ 11.  Best Buy's employees perform those functions exclusively (*id.* ¶¶ 4, 8, 9-11), consistent with the fact that Best Buy's store are places of business of Best Buy, not Apple.

This case thus presents the same issue as *4WEB* and is distinguishable from situations where this Court has found proper venue based on the defendant's exercise of ownership and control over a retail location.  For example, in *Tinnus Enterprises, LLC v. Telebrands Corp.*, the court found that venue properly lay in the district where defendant leased space on store shelves; held that space out as its own; and actively managed inventory at retail locations, including by paying agents "to monitor, clean, restock, and affix price signage."  No. 17-cv-00170-RWS, 2018 WL 4560742, at *5-6 (E.D. Tex. Mar. 9, 2018).  By contrast, Apple neither pays for space nor manages inventory at Best Buy's store (Dockendorf Decl. ¶ 7; Leslie Decl. ¶ 3), and the complaints do not allege otherwise.  Instead, Best Buy manages the inventory, ████████████ ████, and sets its prices.  Leslie Decl. ¶¶ 3-4; Calhoun Jemmings Decl. ¶¶ 9-10; Dockendorf Decl. ¶ 12; Ex. G § ██; Ex. H at ███████████████.  Apple also identifies these Apple Shops as being part of and controlled by Best Buy.  *Infra* Section V.A.1.(c); *see also* Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  Because Apple does not own or exercise control over Apple Shops within Best Buy stores, the presence of Apple employees there does not make Best Buy or the

Apple Shops a place of business of Apple.  *4WEB*, 2024 WL 1932416, at *4.

        (b)      *Apple does not require its employees to live in the District or to store materials to be distributed or sold within the District*

The second consideration outlined in *Cray* (*i.e.*, "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed from that place," 871 F.3d at 1363) is primarily relevant to assessing whether an employee's home constitutes a place of business of the defendant.  *See, e.g.*, *Uniloc USA, Inc. v. Nutanix, Inc.*, No. 17-cv-00174-JRG, 2017 WL 11527109, at *3-4 (E.D. Tex. Dec. 6, 2017) (addressing whether employees' homes are the defendants' places of business).  ACT has made no such allegation here.  *See* Dkt. 1 ¶¶ 2-10; - 687 Dkt. 1 ¶¶ 2-10.  However, to the extent relevant, this factor favors finding venue improper. Apple does not dictate that its employees live within the District.  Calhoun Jemmings Decl. ¶ 13. Nor do Apple employees store materials to be distributed or sold at Best Buy's stores within the District.  *Id.* ¶ 7.  *Compare IOT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *4 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted*, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023) (finding venue was proper when defendant's employees "store a leased vehicle and tens of thousands of dollars of [defendant's] equipment at their homes . . . [to] take[] directly to customer locations for installation and servicing" by those same employees).  Instead, Best Buy controls and owns its inventory of Apple products, as well as the demonstration models of Apple products.  Calhoun Jemmings Decl. ¶¶ 7, 10; Ex. F §§ ███; Ex. G § ███.  To be sure, Apple requires that its employees spend time at Best Buy locations within the District.  *Id.* ¶ 13.  But the venue statute requires a place of business of the defendant, not merely the presence of the defendant's employees.  *Cray*, 871 F.3d at 1363.  As discussed above (*infra* pp. 8-12), Apple does not exercise sufficient possession or control over Best Buy's stores to make those stores a place of business of Apple.

     (c)    *Apple does not hold out Best Buy's stores as places of business of Apple*

Apple does not list Best Buy's stores as a place of business of Apple on Apple's website or on any signage associated with those stores.  ACT points to the store locator feature on Apple's website, which identifies Best Buy locations in the District where Apple products are sold.  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  But as the screenshots included in the complaints show, Apple's website clearly and unmistakably identifies those locations as third-party retailers (*e.g.*, "Best Buy - 0202"), not as locations of Apple.  *Id.*  This District has squarely held that this type of website listing does not demonstrate that third-party retailer locations are places of business of the defendant.  *See AptusTech LLC v. Trimfoot Co.*, No. 19-cv-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020) ("[Defendant] listed stores within the district on its website under a 'store locator' tab. However, the locations all have the names of the independent retailers on them. The website listings do not indicate that they are [defendant's] stores. Thus, [defendant] does not attempt to hold these stores out as its own on its website.").

As the complaints note, Apple's website identifies that "certain Best Buy locations within this District contain Apple Shops."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  But the "Apple Shop" label does not mean the location is a place of business of Apple.  Indeed, Apple's website explains that Apple Shops are located "within select Apple resellers and other retail stores."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.  Consistent with this, the complaints explicitly allege that certain Best Buy locations "contain Apple Shops" and include an image of Apple's website identifying the Apple Shop *as part of "Best Buy,"* where customers can find an Apple Watch through an "Apple Authorized Reseller."  Dkt. 1 ¶ 3; -687 Dkt. 1 ¶ 3.

Best Buy's website reinforces that Apple Shops are part of Best Buy.  The excerpt of Best Buy's website reproduced in the complaints states the Apple Shop is "[n]ow open at a Best Buy near you" and describes the Apple Shop as "our [i.e., Best Buy's] store-within-a store for all

things Apple." Dkt. 1 ¶ 4; -687 Dkt. 1 ¶ 4.  Apple Shops plainly are not a place of business of Apple when neither Apple nor Best Buy holds out those locations as places of Apple.  *See Cray*, 871 F.3d at 1363 ("Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business."); *4WEB*, 2024 WL 1932416, at *3 (finding defendant's "surgeon locator tool" did not serve to ratify hospitals or surgery centers as place of defendant when it "explicitly states that [defendant] is not associated with any of the surgeons or hospitals on the locator"); *AptusTech*, 2020 WL 1190070, at *4 (finding venue improper including because defendant did not "hold these stores out as its own on its website," by listing "the names of the independent retailers" where customers can find defendant's goods).

Best Buy offers for sale ██████████████████████████████████ ██████████████████████████████ Ex. J at ███████████████ ███████████████. The Apple-branded retail environment of the Apple Shop within Best Buy stores provides a defined space where Best Buy displays Apple products for sale within the Best Buy store.  Best Buy also sells products of other manufacturers—including Apple competitors— within their own defined spaces within Best Buy stores.  Ex. M (Tyler location offers "Windows Store," "Samsung Experience Shop," "LG Experience," and "Sony Experience" in addition to "Apple Shop" and others); Ex. N (describing retail environment featuring products from many manufacturers, including in dedicated spaces).  That Best Buy organizes its merchandise by manufacturer does not indicate that Best Buy is a place of business of those manufacturers. Indeed, third-party retailers commonly adopt this "store-within-a-store" model, designating areas within their stores as "shops" focused on a particular manufacturer's products, without transforming the third-party's store into a place of business of the manufacturer.  *See, e.g.*, *Int'l Techs.*, 2018 WL 4963129, at *8 (finding that Samsung's statements on its website that "experience Shops are 'installed in' Best Buy stores to showcase Samsung products to Best Buy

20

customers" was "not sufficient to establish that Samsung holds the Experience Shops out as its own place of business"). Such situations are different than in *Cray*, in which the defendant "places its name on a sign associated with or on the building itself." 871 F.3d at 1363-64.

Finally, ACT relies on statements from Best Buy's and Apple's websites about repairs of Apple products at Best Buy locations as an "Apple Authorized Service Provider." Dkt. 1 ¶ 6; -687 Dkt. 1 ¶ 6. But nothing in those materials suggests that Best Buy's stores are places of business of Apple. On the contrary, the quoted excerpts from Best Buy's website seek to allay concerns arising from the fact that these repairs are done by "our" (*i.e.*, Best Buy) employees, and are not occurring at an Apple location. Dkt. 1 ¶ 6 (Best Buy's website: "Our Agents are Apple-trained, so you can trust us with all your Apple devices, no matter where you bought them."); *id.* (Best Buy's website: "Our Geek Squad® Agents are Apple-trained, so you can trust us with all your Apple devices at any Best Buy store near you."); -687 Dkt. 1 ¶ 6 (same).

Likewise, Apple's website ensures customers that Best Buy provides Apple-quality repair services. Dkt. 1 ¶ 9 (Apple's website: "[Y]ou get the same professionalism and quality of repair you'd expect from Apple."); -687 Dkt. 1 ¶ 9 (same). Those assurances would be unnecessary if these Best Buy locations were a place of business of Apple. Moreover, these allegations that clearly recognize *Best Buy* employees are providing repair services contrast sharply with *AGIS Software Development LLC v. Google LLC*, in which the court found venue because, among other things, Google held out itself as "the provider of repairs" and the third party performing the repairs was "acting behind the scenes" such that customers were "not even aware" of its existence. No. 19-cv-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022).

Best Buy's provision of "Apple-certified" repairs using Best Buy employees who are "Apple-trained and use genuine Apple parts" is not a basis for venue. Dkt. 1 ¶¶ 6, 8; -687 Dkt. 1 ¶¶ 6, 8. The Federal Circuit has squarely rejected that argument. *See In re Volkswagen Grp. of*

*Am., Inc.*, 28 F.4th 1203, 1211-12 (Fed. Cir. 2022) (rejecting argument that car dealerships were place of business of distributer because warranty and maintenance work was consistent with distributor's quality specifications and performed by distributor-trained employees).

       (d)     *Apple's places of business in other venues differ significantly from Best Buy's stores*

In *Cray*, the Federal Circuit recognized that courts may also consider "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." 871 F.3d at 1364. This factor, too, indicates that venue is improper. Outside the Eastern District of Texas, Apple has its own Apple Stores that operate completely differently from the Best Buy locations on which ACT's venue allegations rest. For example, unlike Best Buy's stores where customers can cross-shop products made by numerous different manufacturers, Apple Stores provide an experience focused exclusively on Apple products and related accessories. Dockendorf Decl. ¶ 15; *see* Ex. G § ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, §§ ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮. At Apple Stores, Apple leases the storefronts, owns the merchandise, controls the inventory, provides security, and sets the hours of operation—none of which Apple does at Best Buy's stores. Dockendorf Decl. ¶ 15. Moreover, unlike at Best Buy, Apple employees at Apple Stores themselves complete sales transactions and repair Apple products. *Id.* The comparison with Apple Stores outside the District thus reveals that Best Buy's stores in the District are "not really a place of business at all" for Apple. *Cray*, 871 F.3d at 1364.

\*    \*    \*

Taken together, these factors confirm that Best Buy is a third-party retailer that operates its own stores independently from Apple. Best Buy's locations in the District do not make venue

proper as to Apple, and ACT therefore has not carried its burden of establishing proper venue.

### B.    In the Alternative, ACT's Consolidated Cases Should Be Transferred to the Northern District of California

A defendant is entitled to transfer under 28 U.S.C. § 1404(a) if it shows (1) that the suit "might have been brought" in the proposed transferee district and (2) the "transferee venue is clearly more convenient" than the district in which suit was filed. *Volkswagen II*, 545 F.3d at 312-15.  In determining relative "convenience," courts weigh the "private" and "public" interest factors, without separately weighing plaintiff's choice of venue. *Id.* at 315, 318.  Instead, the weighing of the factors "reflects the appropriate deference to which the plaintiff['s] choice of venue is entitled." *Id.* at 315.  The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted) ("*Volkswagen I*").  The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*; *see also TikTok*, 85 F.4th at 358.  Here, the private and public factors strongly favor transfer of the consolidated cases to the Northern District of California.

### 1.    ACT could have brought this suit in the Northern District of California

Apple is incorporated in California and maintains its headquarters in Cupertino, California—in the Northern District of California—and thus resides there. *See* Dkt. 1 ¶ 1; *TC Heartland*, 581 U.S. at 267-68, 270.  Because any patent suit may be brought in the judicial district where the defendant resides, 28 U.S.C. § 1400(b), this case could have been brought in

the Northern District of California.

      2.      **The Private Interest Factors Weigh Decisively in Favor of Transfer**

      (a)      *The relative ease of access to sources of proof strongly favors transfer*

The relevant sources of proof from both parties as well as relevant third-parties are located almost entirely in California, primarily in the Northern District of California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) ("*Apple I*") (focusing on the source code and records relating to the research, design, marketing, sales and financial information for the accused products) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). In weighing this factor as to electronic evidence, the Court must consider whether such evidence is equally accessible in either forum. *TikTok*, 85 F.4th at 359.

Here, Apple's sources of proof are overwhelmingly in and around Apple's headquarters in the Northern District of California—and none are in this District. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) ("[T]he location of document custodians and location where documents are created and maintained . . . may bear on the ease of retrieval."). Each of Apple's teams working on the design, development, and integration of the functionality accused of infringing each of ACT's six patents has its primary presence in California. *See supra* Section III.D  Similarly, Apple's IP Transaction team is in the Northern District of California. *See* Ankenbrandt Decl. ¶¶ 1, 5. ███████████████████

███████████████████████████████████████████████████████

████████████████████████████████. *Supra* Section III.D

In contrast to the substantial presence of witnesses and documents in the Northern

District of California, none of Apple's witnesses are located in the Eastern District of Texas.  *See supra* Section III.D.  Indeed, no current members of the relevant technical or transactional teams are even located in Texas.  *Id.*  Likewise, with the exception of non-unique records relating to the '101 Functionality potentially accessible ████████████████████████, Apple has not identified any relevant electronic or physical records in or accessible from Texas.  *Id.*; *see also TikTok*, 85 F.4th at 359 (finding factor weighed in favor of transfer when evidence was accessible by employees in transferee forum, but not easily accessible in transferor forum).

As to third-party sources of proof, those too are in California.  Broadcom's sources of proof and its employees with whom Apple has interacted relating to the accused Wi-Fi 6 functionality are located in California—including in the Northern District of California, where Broadcom is headquartered.  Ex. L; Shah Decl. ¶ 5.  Likewise, Qualcomm's sources of proof are in California, where Qualcomm is headquartered and where the employees with whom Apple has interacted relating to the accused 5G functionality are located.  Ex. K; Dhanapal Decl. ¶ 5; *see also In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) (finding district court did not sufficiently credit the "identified sources of proof and likely witnesses" in the transferee forum, including "over a dozen third-party individuals with relevant and material information").[4]

Given the "wealth of important information" in and near the Northern District of California from Apple, third-parties Broadcom and Qualcomm, and even plaintiff ACT, whose managing director Deepak Sharma lives and works in the Northern District of California (*see* Ex. C at 20; Ex. E), this factor weighs heavily in favor of transfer to that District.  *Apple I*, 979 F.3d

---

[4] ACT's Initial Disclosures identify four entities purportedly located in Texas that ACT claims "*may* possess knowledge regarding negotiations and licensing agreements with Apple."  But ACT does not identify any connection to the asserted patents, this suit, or the accused technology, merely speculating that some have, at best, some connection to Apple.  Likewise, ACT identifies an inventor, not of any asserted patent, but of a publication that was allegedly cited by a third-party in another proceeding.

at 1340 (relying on Apple's "significant amount of relevant information in NDCA, including the relevant source code, Apple records relating to the research and design of the accused products, and marketing, sales, and financial information for the accused products").

> (b)    *Compulsory process over third-party witnesses strongly favors transfer to the Northern District of California*

The compulsory process factor strongly favors transfer because the Northern District of California will have absolute subpoena power over any Broadcom and Qualcomm employees. *See* Fed. R. Civ. P. 45(c) (granting compulsory process over non-party witnesses within "the state where" the person resides, works, or regularly transacts business in person).  Broadcom and Qualcomm, which respectively supply chipsets that support the '891 patent's accused Wi-Fi 6 and 5G functionality, are headquartered in California and their likely witnesses are in California. Exs. L, K; Shah Decl. ¶ 5 ███████████████████████████████████

████████████████████████; Dhanapal Decl. ¶ 5 ██████████████████████

███████████████████████████████████████████████████.  Thus, the relevant Broadcom and Qualcomm witnesses are within the Northern District of California's subpoena power and outside this District's compulsory power.  *See* Fed. R. Civ. P. 45(c); Exs. O, P.  Apple has no reason to believe that these California-based third-party witnesses would be willing to appear in Texas.  This factor strongly favors transfer when, as here, a substantial number of non-willing witnesses reside in the transferee forum, and none resides in the transferor forum.  *See Genentech*, 566 F.3d at 1345; *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (transfer strongly favored because "more third-party witnesses reside within the transferee venue than reside in the transferor venue"); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) (finding this factor nearly dispositive when relevant third-party witnesses are overwhelmingly within only transferee venue's subpoena power).

         (c)    *Cost of attendance for willing witnesses strongly favors transfer*

The convenience and cost of witness attendance is the most important factor, and this consideration is no less important for party witnesses.  *See In re Juniper Networks, Inc*., 14 F.4th 1313, 1319-20 (Fed. Cir. 2021) ("[T]he convenience-to-the-witness factor is [not] attenuated when the witnesses are employees of the party calling them.") (citing *Hulu*, 2021 WL 3278194, at *5).  This factor weighs strongly in favor of transfer when, as here, "there are several witnesses located in the transferee forum and none in the transferor forum."  *See In re Apple Inc*., No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) ("*Apple II*").

Apple's California-based witnesses with relevant information critical to its non-infringement defenses and the calculation of damages would each be required to travel over 1,500 miles to testify in the Eastern District of Texas.  Exs. O, P; *see also supra* Section III.D.  The inconvenience of a trial in this District is not diminished because these individuals are Apple employees.  If transfer were denied, they would experience substantial expense and disruption in their professional and personal lives, resulting in the precise inconveniences § 1404(a) was designed to address.  *See Apple II*, 2021 WL 5291804, at *3; *Volkswagen I*, 371 F.3d at 204-05; *Juniper*, 14 F.4th at 1319 (concluding district court erred in attaching "little weight to the evidence regarding the party witnesses").  Likewise, ACT's witness, Mr. Sharma, would need to travel over 1,800 miles to testify in the Eastern District of Texas.  Ex. N.  But if this case were litigated in the Northern District of California, Apple's employees and Mr. Sharma would only need to drive a short distance from Cupertino to the courthouse, substantially minimizing disruption to their personal and professional lives.  *See* Ex. Q; *TikTok*, 85 F.4th at 361 (explaining "it is more convenient for witnesses to testify at home").  The Northern District of California is also more convenient for any Apple witnesses traveling from San Diego.  Ex. R.

The convenience of these witnesses in the Northern District of California weighs strongly

in favor of transfer. *See Juniper*, 14 F.4th at 1319 (a court may not discount the convenience of a witness based on a "categorical assumption" regarding the likelihood of testifying).

(d)    <em>Any remaining "practical problems" are neutral</em>

The "practical problems" catch-all factor is neutral because no relevant "problems" of judicial economy exist. Any progress in these cases is minimal and, regardless, irrelevant to this analysis. *See In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021).

**3.    Public Factors Weigh Decisively in Favor of Transfer**

(a)    <em>The local interest factor favors transfer</em>

The Northern District of California has a greater interest in the outcome of this case than the Eastern District of Texas. *See In re DISH Network, LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (comparing the relative interest in the transferee and transferor forums) ("*DISH*"). Apple's headquarters, its principal place of business, and critically the events that gave rise to this suit—including the design, development, and incorporation of the accused functionalities (*supra* Section III.D)—occurred in the transferee forum. *See Clarke*, 94 F.4th at 511 (stressing that the court should consider "the significant connections between a particular venue and the events that gave rise to a suit") (quotation omitted); *Samsung*, 2 F.4th at 1380 (finding factor weighed in favor of transfer when the "relevant events leading to the infringement claims here took place largely in Northern California, and not at all in [transferor forum]"). Thus, "because the accused products were designed, developed and tested in [the Northern District of California]; and because the lawsuit calls into question the work and reputation of several individuals residing in [the Northern District of California], this factor weighs in favor of transfer." *Apple I*, 979 F.3d at 1345 (internal citation omitted) *see supra* § III.D.

While Apple has ten employees who part-time work at Best Buy locations in the District, their responsibilities relate to educating Best Buy employees and customers about Apple's

28

products.  *See* Calhoun Jemmings Decl.¶¶ 5-7.  These activities are far removed from the conduct giving rise to this infringement action, such as the accused functionality's design and development, which occurred primarily in California.  *See Apple II*, 2021 WL 5291804, at *5 (error to rely on Apple's "general presence in the transferor forum, not the locus of the events that gave rise to the dispute") (citation omitted); *DISH*, 2021 WL 4911981, at *3 (movant's facilities in district were "insubstantial compared to [the transferee forum's] significant connection to the design and development of the accused features").  Similarly, Apple's nationwide sales of accused products is irrelevant because contacts common across districts cannot support any "localized" interest.  *Clarke*, 94 F.4th at 510; *Samsung*, 2 F.4th at 1380.

Moreover, ACT's own connection to the Northern District of California—including the formation of its parent company and the presence of its managing director there—bolsters the transferee forum's interest in the outcome of this case.  Ex. C at 20; Ex. E.  ACT's formation in the Eastern District of Texas does not outweigh ACT's and Apple's substantial ties to the Northern District of California, particularly because ACT's formation in this District appears to be designed for the sole purpose of creating jurisdiction and venue rather than providing genuine ties to the forum.  *See In re Juniper*, 14 F.4th at 1320-21 (granting mandamus to direct transfer where plaintiff had only a litigation-driven pre-filing presence in the District); *In re Samsung*, 2 F.4th at 1377 ("[T]he Supreme Court and [the Federal Circuit] have repeatedly assessed the propriety of venue by disregarding manipulative activities of the parties.").

Given the balance of interests between the Northern District of California and the Eastern District of Texas, this factor weighs in favor of transfer.

    (b)    *Familiarity with governing law and conflicts of law factors are neutral*

Because this case is governed by federal patent law, the last two public interest factors are neutral.  *See In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (en banc).

(c)    *The court congestion factor is neutral*

The court congestion factor is "the 'most speculative' of the factors bearing on the transfer decision." *Juniper*, 14 F.4th at 1322 (quotation omitted).  Over the past five years, this District's median time to trial has been approximately 8 months quicker than the Northern District of California.  Exs. S, T.  However, this slightly faster time-to-trial is not consequential given that ACT is a non-practicing entity.  *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (finding court congestion neutral because patent owner "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other cases, might add urgency to case resolution).  Accordingly, this factor is neutral.

\*    \*    \*

As set forth above, the private- and public-interest factors—including the ease of access to the sources of proof, compulsory process, convenience to willing witnesses, and local interest– weigh strongly in favor of transfer to the Northern District of California.  The only connection this suit has to the Eastern District of Texas is ACT's formation here as an LLC—a fact that should be given little or no weight where it was engineered to manufacture a venue connection to Texas for Mr. Sharma, who resides in and conducts business from California.  *See e.g.*, *Juniper*, 14 F.4th at 1320-21.  Even if the Court credits ACT's presence in this District, such connection is insufficient to defeat transfer when the Northern District of California is more convenient for nearly all witnesses, and when the bulk of the relevant documents and evidence is located there—and none are in this District.  *See Apple I*, 979 F.3d at 1340 (explaining "the movant need not show that all relevant documents are located in the transferee venue").

## VI.    CONCLUSION

For the foregoing reasons, Apple respectfully submits that these consolidated cases should be dismissed or, in the alternative, transferred to the Northern District of California.

Dated: October 21, 2024                    Respectfully submitted,


By:    */s/ Kevin J. Post*
                        Melissa R. Smith
                        State Bar No. 24001351
                        GILLAM & SMITH, LLP
                        303 South Washington Avenue
                        Marshall, Texas 75670
                        Telephone: (903) 934-8450
                        Facsimile: (903) 934-9257
                        Email: melissa@gillamsmithlaw.com

                        James R. Batchelder
                        (CA Bar No. 136347)
                        (Eastern District of Texas Member)
                        Shong Yin
                        (CA Bar No. 319566)
                        **ROPES & GRAY LLP**
                        1900 University Avenue, 6th Floor
                        East Palo Alto, CA  94303-2284
                        Telephone: (650) 617-4000
                        Facsimile: (650) 617-4090
                        James.Batchelder@ropesgray.com
                        Shong.Yin@ropesgray.com

                        Steven Pepe
                        (NY Bar No. 2810430)
                        Kevin Post
                        (NY Bar No. 4382214)
                        Alex Middleton
                        (NY Bar No. 4797114)
                        Lance Shapiro
                        (NY Bar No. 5397955)
                        **ROPES & GRAY LLP**
                        1211 Avenue of the Americas
                        New York, NY 10036-8704
                        Telephone: (212) 596-9000
                        Facsimile: (212) 596-9090
                        Steve.Pepe@ropesgray.com
                        Kevin.Post@ropesgray.com
                        Lance.Shapiro@ropesgray.com

                        Kathryn Thornton
                        (D.C. Bar No. 198591)
                        Ryan Brunner

(DC Bar No. 241467)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, N.W.
Washington DC 2006-6807
Telephone: (202) 508-4600
Facsimile: (202) 508-4888
Kathryn.Thornton@ropesgray.com
Ryan.Brunner@ropesgray.com

**COUNSEL FOR DEFENDANT
APPLE INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 21, 2024, to all counsel of record via email.

/s/ Melissa R. Smith
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), counsel for Defendant met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

/s/ Melissa R. Smith
Melissa R. Smith