# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ADVANCED CODING TECHNOLOGIES LLC, | § § § § | Case No. 2:24-cv-00572-JRG (LEAD CASE) |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | ████████████████ |
| APPLE INC., | § § § | |
| Defendant. | § § | |

| | | |
|---|---|---|
| ADVANCED CODING TECHNOLOGIES LLC, | § § § | Case No. 2:24-cv-00687-JRG (MEMBER CASE) |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | ████████████████ |
| APPLE INC., | § § § | |
| Defendant. | § § § | |

## PLAINTIFF ADVANCED CODING TECHNOLOGIES LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS FOR IMPROPER VENUE OR ALTERNATIVELY TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. 37)

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................ 1

II. FACTS ................................................................................................................ 2

    A. ACT's Allegations ................................................................................ 2

    B. Apple's Regular and Established Places of Business ........................... 4

        1. Apple's Merchandising Guidelines and Signage ..................... 5

        2. Apple Pays for the Apple Shops ............................................. 7

        3. Apple Establishes the Locations of the Apple Shops and Controls Details of Their Operations ...................................... 7

        4. Apple Employees Regularly Work in the Apple Shops ........... 8

        5. Apple's Agents Operate the Apple Shops ............................... 9

    C. Locations of Witnesses and Evidence ................................................. 9

III. LEGAL STANDARD ....................................................................................... 11

    A. Venue ................................................................................................. 11

    B. Transfer .............................................................................................. 12

IV. ARGUMENT .................................................................................................... 13

    A. The Complaint Should Not Be Dismissed for Improper Venue Because the Apple Shops are Apple's Regular and Established Places of Business ........ 13

        1. Apple Holds Out the Apple Shops as Its Own Places of Business .......... 14

        2. Apple Establishes the Apple Shops and Controls Their Operation ........ 16

        3. Apple's Employees Regularly Visit the Apple Shops and Apple's Agents Operate the Apple Shops ............................................. 18

        4. To Customers, Apple Shops Are No Different From Apple Stores ......... 21

    B. Transfer is Inappropriate Because Apple Has Not Met Its Burden to Show That California Is Clearly More Convenient ........................................... 22

        1. The Private Interest Factors Do Not Favor Transfer ............... 22

a.    The Relative Ease of Access to Sources of Proof Weighs Against Transfer.................................................................22

b.    The Availability of Compulsory Process Weighs Against Transfer ...............................................................................24

c.    The Cost of Attendance for Willing Witnesses Weighs Against Transfer.................................................................26

d.    The Practical Problems Factor Weighs Against Transfer............28

2.    The Public Interest Factors Do Not Favor Transfer .............................29

a.    The Local Interests Weigh Against Transfer.............................29

b.    Court Congestion Weighs Against Transfer..............................29

C.    ACT Requests Venue Discovery.......................................................30

V.    CONCLUSION...............................................................................30

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4WEB, Inc. v. NuVasive, Inc.*,
No. 23-cv-00192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024)...........................19, 20

*AptusTech LLC v. Trimfoot Co., LLC*,
No. 19-cv-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020).............................15

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*,
No. 2:17-cv-00418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018),
*vacated sub nom*, 2019 WL 3494359 (Aug. 1, 2019)............................................14, 15, 16

*Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*,
No. 1:07-cv-699, 2008 WL 686156 (E.D. Tex. Mar. 6, 2008)...........................................11

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024)......................................................................................12, 29

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
No. 6:12-CV-100-LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013)...................12, 23

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ...........................................................................11, 12, 13

*Defense Distrib. v. Bruck*,
30 F.4th 414 (5th Cir. 2022).......................................................................12, 22, 23, 25

*In re EMC Corp.*,
501 F. App'x 973 (Fed. Cir. 2013).................................................................................28

*In re Google LLC*,
949 F. 3d 1338 (Fed. Cir. 2020)...................................................................12, 18, 19, 21

*Japan Display Inc. v. Tianma Microelectronics Co.*,
No. 2:20-CV-00283-JRG, 2021 WL 3772425 (E.D. Tex. Aug. 25, 2021)..........................13

*Jawbone Innovations, LLC v. Samsung Elecs. Co.*,
No. 2:21-cv-00186-JRG-RSP, 2022 WL 4004195 (E.D. Tex. Aug. 31, 2022)....................23

*In re Kia Corp.*,
No. 2024-0138, 2024 WL 4355616 (Fed. Cir. Oct. 1, 2024).............................................28

*Longhorn HD LLC v. Juniper Networks, Inc.*,
No. 2:21-CV-00099-JRG, 2021 WL 4243382 (E.D. Tex. Sept. 16, 2021).........................30

*Meyer v. Holley*,
   537 U.S. 280 (2003).................................................................. 20, 21

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ............................................................. 13

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022)......................................................... 23, 24, 30

*Rembrandt Wireless Techs, LP v. Apple Inc.*,
   No. 2:19-CV-00025-JRG, 2019 WL 6344470 (E.D. Tec. Nov. 27, 2019).......................... 29

*Slyde Analytics LLC v. Apple Inc.*,
   Case No. 2:24-cv-00331-RWS-RSP, Dkt. 21 (E.D. Tex. July 15, 2024).............................. 4

*Slyde Analytics, LLC v. Zepp Health Corp.*,
   No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228 (E.D. Tex. Aug. 22, 2024)................... 26

*Tinnus Enters., LLC v. Telebrands Corp.*,
   No. 6:17-cv-00170-RWS, 2018 WL 4524119 (E.D. Tex. May 1, 2018)........................... 17

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................... 12, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................ 12, 22, 23

*In re Zepp Health Corp.*,
   No. 2025-100, 2024 WL 4799482 (Fed. Cir. Nov. 15, 2024) ............................. 23

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ........................................................ 11, 17

**Statutes**

28 U.S.C. § 1400(b)..................................................................... 11, 13

28 U.S.C. § 1404(a)...................................................................... 2, 12

**Other Authorities**

Restatement (Third) of Agency § 1.01 .................................................... 20

## I.      INTRODUCTION

This case is properly proceeding in Texas because the Apple Shops in Best Buy locations in this District are Apple's regular and established places of business. Apple controls nearly all activity in its Apple Shops. The Apple Shops sell Apple merchandise only, which is displayed on Apple-supplied furniture and placed on that furniture according to Apple's exacting standards and specifically designed to mimic an Apple-owned store. An example of such an Apple Shop inside a Best Buy is shown below:[1]



Apple supplies signage that displays Apple trademarks, and Apple employees regularly visit the Apple Shops to conduct training and interact directly with customers. Best Buy employees also act as Apple's agents by assisting customers with purchases of Apple products according to Apple's own training. These Apple Shops are established by Apple, are advertised and locatable

---

[1] Dkt. 37-1 (Dockendorf Decl.) ¶ 5

on Apple's website, and held out to customers as Apple's places of business. That actual sales of Apple merchandise are conducted by Best Buy cashiers is not relevant to the analysis under any of the current case law.

This case should also not be transferred for convenience under 28 U.S.C. § 1404(a). ACT resides in this District, as do multiple party and non-party witnesses. ACT conducts research and development at the University of Texas at Tyler related to some of the Patents-in-Suit in this District, which has resulted in two papers so far.

Multiple non-parties reside in this District, including ██████████████████████ ███████████████████████ who has knowledge regarding the sales of ████ products by that ██████ which is directly relevant to a potential royalty rate. Other non-parties subject to the subpoena power of this Court include a critical prior art author whose patent publication was used as prior art in a previous IPR against one of the Patents-in-Suit, and at least three prior licensees of Apple that have knowledge regarding Apple's licensing practices.

Because this Court has already presided over several cases involving some of the Patents-in-Suit, including conducting a *Markman* hearing and issuing a claim construction order, and because there is also a co-pending case against Google in this Court, transferring this case would cause a severe loss of judicial economy.

## II.     FACTS

### A.     ACT's Allegations

ACT filed two Complaints against Apple which have been consolidated into this case. Dkt. 13 at 2-3. ACT's venue allegations with respect to these two cases are identical. Dkt. 1 ¶¶ 2–10; 2:24-cv-00687, Dkt. 1 ¶¶ 2–10.

ACT alleges that "Apple Shops" located in Best Buy stores located in this District are Apple's "regular and established places of business" for the purposes of venue. *Id.*, ¶ 13. ACT

alleges at least two of these Apple Shops exist in this District. *Id.* ¶ 3. According to Apple's website, "Apple Shops are Apple-designed outlets located within select Apple resellers and other retail stores. Many are staffed with Apple Solutions Consultants — trained Apple employees who can help you find the best solution." *Id.* According to ACT's Complaint, these Apple Shops are advertised on Apple's website:



*Id.* ¶ 3 (citing https://locate.apple.com/sales?pt=6&lat=33.021827697753906&lon=-96.69925689697266&address=Plano%2C+TX)

ACT also alleges that Best Buy performs Authorized Service on behalf of Apple, and that Best Buy advertises that it is an "Apple Authorized Service Provider[]" whose agents are "Apple-trained and use genuine Apple parts on every repair." *Id.* ¶ 6:



Apple advertises on its website these Best Buy locations as Apple Authorized Service Providers as certified "so you get the same professionalism and quality of repair you'd expect from Apple." *Id.* ¶ 9.

ACT further alleges in its Complaint that "Defendant employs individuals in this Judicial District involved in the technology, sales, and marketing of its products." *Id.* ¶ 7. In another litigation pending in this District in which Apple has filed a similar motion, Apple admitted that "[w]hile at Best Buy, Apple's employees provide information about Apple's products to prospective customers" and that "[m]any are staffed with Apple Solutions Consultants – trained Apple employees who can help you find the best solution." *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS-RSP, Dkt. 21 at 11 (E.D. Tex. July 15, 2024); *Id.* ¶ 10.

B.    **Apple's Regular and Established Places of Business**

In support of its Motion, Apple provided three declarations from employees explaining the relationship between Apple and Best Buy, as well as details about the business operations of the

Apple Shops. *See* Dkts. 37-1–37-3 (Declarations of S. Dockendorf, J. Leslie, and S. Calhoun). Apple also provided the agreements delineating this business relationship. Exs. F–J. The relevant relationship between Apple and Best Buy began in ███ when they entered into a ██████

██████ Ex. F. In ███, they entered into an ████████████████████ to the

████████ which defined ██████████████████████

████████ Exs. G, H.

████████ (Ex. I) ██████ (Ex. J).

The record evidence provided by Apple shows conclusively that ACT's allegations are correct, and that Apple (1) holds the Apple Shops out to customers as places of business of Apple; and (2) exercises sufficient control over the Apple Shops for the Best Buy employees to be Apple's Agents.

### 1. Apple's Merchandising Guidelines and Signage

Apple and Best Buy go to great lengths to make the Apple Shops look and feel like an Apple retail store. Apple provides ████████████████████████

████████████████████████████. Ex.

H at ████████████████████████

████████████████████





██████████████████████. Apple goes so far as to specify the ████████████
████████████████████



████████████████████

Apple provides, at ████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████ Apple also

provides ████████████████████████████████████ Best Buy must use

Apple's ████████████████████████████████████████████████

████████████

    **2.**      **Apple** ████████ **the Apple Shops**

████████████████████████████████████████████████████████

██████████████████████████████████ Ex. J at ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

    **3.**      **Apple Establishes the Locations of the Apple Shops and Controls Details of Their Operations**

Before establishing an Apple Shop, Best Buy is required to provide ████████

████████████████████████████████████████████████████████

████████████████████████████████ Ex. G at ████████████████████

████████ The ██████████ allows Apple to confirm that the ████████████████

██████████████████████████████ *Id.* Once operational, Best Buy must operate the Apple

Shop in accordance with ████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ██████████

████████████████████████ The Apple Shop must be ████████████████████████

████████████████████████████████████████████████

If Best Buy wants to change the location of the Apple Shop in one of its stores, ████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.* ██████████

████████████████ Best Buy agreed ████████████████████████████

█████████ Ex. J ██████████████████████████████

Apple requires that each Apple Shop location meets a stringent set of guidelines. Each Best Buy store containing an Apple Shop must ████████████████ which is solely determined by ████████████████ *Id.* ██████████████████████ Apple even has a say in the ████████████████████████████; the Best Buy must contain products with a ████████████████████████ *Id.* It also must provide a █████████████████████████████████████████████████████ *Id.* Apple has the right to ████████████████████████████████ ████ *Id.*

**4.   Apple Employees Regularly Work in the Apple Shops**

Apple Employees ████████████ to support the program ██████████████ █████████████████████████████████████████████████████ Ex. J at ████████████████ ██████████████ Best Buy is required to allow Apple Employees to work in the Apple Shop ████████████████████████████████████████████████ Apple admits that Apple Employees regularly work in the Apple Shops in this District. Mot. at 16 ("[T]en Apple employees work within Best Buy's stores in this District" (citing Dkt. 37-3, Jemmings Decl. ¶ 5)); Ex. J at ████ ██████████████████ ██ ████████████████ These employees ████████████ ████████████ interact with customers, ██████████████████████████ *Id.*

### 5. Apple's Agents Operate the Apple Shops

In addition to Apple's employees that regularly visit the Apple Shops, ███████████

██████████████████████████████████████████████████████

████████████ Best Buy must ensure that its employees are ████████████ or █████

████████ These terms are defined to be ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████ Best Buy is required to ensure that ████████████████████████

██████████████████████████████████████████████████████

███████████████████████████ Apple requires that ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████ Best

Buy staff are also required ██████████████████████████████████████

███████████████████████████████████

### C. Locations of Witnesses and Evidence

ACT is a Texas LLC, with two offices in this District: one in Marshall and one in Tyler. Sharma Decl. ¶¶ 3-4. ACT was formed in February 2022 and has been operating in this District since then. *Id.* These operations include intellectual property monetization, as well as research and development. ACT sponsors significant research at the University of Texas at Tyler—also located

in this District—which will result in ███████████████████████████████████████

███████████████████. This research is conducted by ███████████████. ACT has

already litigated most of the Patents-in-Suit in this case in this District against two previous sets

of defendants. *See Advanced Coding Techs. LLC v. LG et al.*, No. 2:22-cv-00501-JRG-RSP. This

Court presided over those previous litigations, which resulted in settlements. The Court held a

*Markman* hearing and issued a claim construction order. Ex. 1. In that case, ACT's principal,

Mr. Deepak Sharma, appeared for his deposition in Marshall. Sharma Decl. ¶ 9.

Apple is a multinational consumer electronics company headquartered in Cupertino,

California. Apple maintains offices all over the globe, and its locations in the United States include

offices in Los Angeles, Cupertino, and San Diego in California, as well as Austin, Seattle, New

York, Boston, Pittsburgh, Boulder (CO), and Beaverton (OR). Apple's Austin facility employs

between 5,000 and 15,000 people. Ex. 2. Apple also employs multiple individuals in Texas with

knowledge regarding video codecs, including Graphics Software Engineer Dave Wilson (Ex. 3),

and SoC Design Verification specialist Afshin Nourivand (Ex. 4). These individuals likely have

knowledge regarding the accused software and hardware AV1 decoders/encoders in this case.

Several third parties with relevant knowledge are located in this District or are located

outside of the proposed transferor district. One of the ███████████████ prior litigants from ACT's

earlier litigations, Samsung, has a significant presence in Plano. Samsung's Director of Corporate

Accounting, ███████████████ is knowledgeable regarding Samsung's sales of ███████ products in

the United States, is located in this District and may be subpoenaed here. *See* Ex. 5. ███████ has

knowledge regarding the sales of Samsung products that are █████████████████████████ Ex.

6.

ACT has also identified several other entities located in this District that upon information and belief have entered into patent licenses with Apple. These include AGIS Software Development, LLC (located in Marshall), RFCyber Corp. (located in Plano), and Jawbone Innovations LLC (located in Marshall). Ex. 6. These entities have knowledge regarding patent licensing with Apple, and this knowledge is relevant to damages, as well as, for example, issues related to notice letters and potential risks of declaratory judgment actions.

The Alliance for Open Media ("AOM"), an industry consortium responsible for creating and maintaining the accused AV1 video codec, is located in Wakefield, Massachusetts. *Id.* It is expected that AOM will have information regarding the design, development, and operation of the AV1 video codec and will also likely be called to testify about the AV1 specification and AV1 source code libraries. At least one known prior art inventor, Zhongli He, is located in Austin, and Apple's own initial disclosures in this case identify potentially relevant third party witnesses in Japan, Ohio, Washington D.C., Virginia, New York City, London, Chicago, San Diego, and Shanghai in addition to one potentially relevant third party in Palo Alto. Exs. 6-7.

## III.  LEGAL STANDARD

### A.  Venue

Venue lies only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citing *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)). When challenged, the burden of establishing that venue is proper under 28 U.S.C. §1400(b) belongs to the Plaintiff. *Id.* at 1013. "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-cv-699, 2008 WL 686156, at *5

(E.D. Tex. Mar. 6, 2008). "[Section] 1400(b) requires that 'a defendant has' a 'place of business' that is 'regular' and established.' All of these requirements must be present." *In re Cray Inc.*, 871 F.3d at 1362. "[T]he first requirement is that there must be a physical place in the district"; "[t]he second requirement . . . is that the place must be a regular and established place of business"; and "the third requirement . . . is that the regular and established place of business must be the place of the defendant." *Id.* at 1362-63 (internal quotations omitted). "[A] 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F. 3d 1338, 1345 (Fed. Cir. 2020).

B.      **Transfer**

"When a defendant is haled into court, some inconvenience is expected and acceptable." *Defense Distrib. v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, as the Fifth Circuit has recently reiterated, a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be denied unless the movant "adduce[s] evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.* The party seeking transfer must demonstrate good cause for the transfer, *i.e.*, that the transferee venue is clearly more convenient for both the parties and the witnesses. *Id.*; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This "'places a significant burden on [Defendants] to show good cause for transfer:' a burden that this Court does not take lightly." *Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, No. 6:12-CV-100-LED-JDL, 2013 WL 682849, at *2 (E.D. Tex. Feb. 22, 2013). The standard is not met if it is merely shown that the transferee venue "is more likely than not to be more convenient." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

If the suit could have been brought in the proposed district, the Court should then consider the Fifth Circuit's private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th

Cir. 2004) ("*Volkswagen I*"). The private interest factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*; *In re Nintendo Co.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009). The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the law that will govern the case; and (4) avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. "[R]espect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-00283-JRG, 2021 WL 3772425, at *2 (E.D. Tex. Aug. 25, 2021) (citing *Volkswagen I*, 371 F.3d at 203).

## IV. ARGUMENT

### A. The Complaint Should Not Be Dismissed for Improper Venue Because the Apple Shops are Apple's Regular and Established Places of Business

Apple does not dispute that the Apple Shops in this District are places of business, or that they are "regular and established." Apple disputes whether the Apple Shops are places of business "of the defendant," as required by 28 U.S.C. § 1400(b). *In re Cray*, 871 F.3d at 1360. Because Apple establishes and ratifies the Apple Shops in this District, engages in its business in those locations including by sending its own employees to those locations to train others on how to sell and use Apple products, lists these Apple Shops as its own places of business on its own website, and provides all of the signage and furniture for the Apple Shops so that consumers recognize them as Apple-approved locations, the Apple Shops are places of business of Apple.

A defendant is not required to own or lease the regular and established place of business in order for that place to be considered "of the defendant." The Federal Circuit has enumerated several "relevant considerations" that can be considered by Courts, including whether the defendant exercises attributes of possession or control over the place, whether there exist marketing or advertisements showing the defendant holding the place out to consumers as its own place of business, and "a defendant's representations that it has a place of business in the district." *Id.* at 1363–67. These factors are not exhaustive, bur merely illustrative of the types of inquiries courts should undertake while attempting to ascertain whether a place of business is "of the defendant." *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-cv-00418-JRG, 2018 WL 4849345, at *6 (E.D. Tex. Sept. 6, 2018), *vacated sub nom*, 2019 WL 3494359, at *1 (Aug. 1, 2019). For at least three distinct reasons, Apple Shops constitute the places of business "of the defendant."

### 1. Apple Holds Out the Apple Shops as Its Own Places of Business

As pled in ACT's Complaints, Apple advertises the locations of the Apple Shops on its website, including the Apple Shops in Plano. Dkt. 1 ¶ 3. Apple also specifically designs the Apple Shops to look like Apple Stores, with only approved Apple signage and furniture being permitted to be displayed. Apple relies on these facts collectively so that consumers would readily consider Apple Shops as places of business "of" Apple.

Apple represents that it has a place of business in this District. A search for Apple Stores and Apple Authorized Resellers on the Apple website lists the Plano Best Buy as specifically containing an "Apple Shop":



Dkt. 1 ¶ 3. Apple argues that listing third-party retailers on a website has been "squarely held" to not demonstrate that third party retailer locations are locations of the defendant. Mot. at 19. Apple's cited case law differs greatly from the situation here. First, the "store locator" tab in that case did not contain the trademark of the defendant, unlike here where the Plano Best Buy is specifically listed as containing an "Apple Shop." *AptusTech LLC v. Trimfoot Co., LLC*, No. 19-cv-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020). Second, the retailer in *AptusTech* merely purchased products from the defendant and re-sold them. *Id.* at *3–*4. The defendant did not provide signage, furniture, or merchandising guidelines and had "very little" input about product placement and does not "dictate any type of display." *Id.* Here, Apple does precisely the opposite, providing its own signage, listing the Best Buy location on its website as an Apple Shop, and requiring the display of Apple products only.

Naming the Apple Shop after Apple shows that Apple has ratified the Apple Shops as its own. *Blitzsafe*, 2018 WL 4849345, at *8 ("the dealerships are *named* 'BMW' . . . .)" The Apple Shops are ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████



███████████████████████ Apple provides, ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Apple also provides ████████████████████████

██████████████████ *Id*. Apple specifically holds out its Apple Shops as places of business of

Apple as places where a customer may purchase Apple Merchandise and has ratified these Apple

Shops as places of business of Apple. *See Blitzsafe*, 2018 WL 4849345, at *8–*9.

### 2. Apple Establishes the Apple Shops and Controls Their Operation

Apple's requirements for establishing the Apple Shops, ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ ██████████████████████

█████████████████████████████ Apple ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ Apple "establishes" an Apple Shop

because, before establishing an Apple Shop, Apple conducts ███████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████

Apple's control of the Apple Shops goes beyond merely establishing their location. Once

established, Best Buy must operate the Apple Shop ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████ This goes well beyond the control previously held sufficient. *Tinnus Enters., LLC v.*

*Telebrands Corp.*, No. 6:17-cv-00170-RWS, 2018 WL 4524119, at *2 (E.D. Tex. May 1, 2018)

(holding that a section inside a larger store was the place of business of defendants where

defendants "hold this space out as their own, pay fees to construct the space in retail stores, and

control product placement for these spaces."). Apple's control over the Apple Shops mirrors that

of Telebrands' control over the spaces in that case, and in certain aspects exceeds it.[2]

Whether a location can be moved bears on whether the place of business is "of" the

defendant. *In re ZTE (USA)*, 890 F.3d at 1015. Here, if Best Buy wants to change the location of

the Apple Shop in one of its stores, it must ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Apple also exercises control over the Apple Shops because Best Buy cannot ████████████

████████████████████████████████████

---

[2] Apple argues that *Tinnus* is inapposite because the defendant leased space on the shelves and
paid agents to "monitor, clean, restock, and affix price signage." Mot. at 17. But the agreements
of record in this case show that Apple ████████████████████████████████████

Apple also controls each Apple Shop location by requiring it to meet a stringent set of guidelines. Each Best Buy containing an Apple Shop must ███████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████ The Best Buy must contain products with a ███████████████

███████████████████ *Id.* It also must provide ███████████████████████████████

███████████████████████████████████ *Id.* Apple has ███████████████████████

███████████████████████████████████████

Because Apple controls the establishment of the Apple Shops, requires ████████████████

███████████████████████ provides a ███████████████████████████████████████

███████████████████████████████████ and requires ███████████████████████

███████████████████ Apple sufficiently controls the Apple Shops for them to qualify as Apple's regular and established places of business.

### 3. Apple's Employees Regularly Visit the Apple Shops and Apple's Agents Operate the Apple Shops

Apple Employees regularly work at the Apple shops, and ███████████████████████

███████████████████████████████████████ and therefore operate as Apple's agents at the Apple Shops. "[A] 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345. Apple admits that its employees regularly conduct business at Apple Shops, and the agreements corroborate this. Mot. at 16 ("[T]en Apple employees work within Best Buy's stores in this District" (citing Dkt. 37-3, Jemmings Decl. ¶ 5)); Ex. J at ███████████████████████████████████.[3]

---

[3] Best Buy is also *required* by the parties' agreements ███████████████████████████

███████████████████████████████████████████

Apple's Employees' presence at the Apple Shops is "regular" under the guidelines of *In re Google*. Apple admits that its "Specialists" are required to work in the Apple Shops from Friday to Sunday. Dkt. 37-3, Jemmings Decl., ¶ 6. Apple's declarations are silent regarding the schedules of the other types of employees. But even assuming that no Apple Employees are present within the Apple Shops from Monday to Thursday, having the largest group of employees required to be within the Apple Shops during the busiest time of the week for in-person shopping is a "regular" presence there.

The regularly present Apple Employees also conduct Apple's business at the Apple Shops. Although they do not conduct transactions, Apple's Employees conduct Apple's business by encouraging and facilitating sales of Apple products. Apple admits that its employees in Apple Shops "are responsible for engaging with Best Buy's employees and customers, educating them about Apple's products, advocating for Apple's brand, and helping customers choose an Apple products that best suits their needs." *Id.* ¶ 7. Under even the narrowest interpretation, educating people about Apple's products and helping customers choose an Apple product are methods by which these employees conduct Apple's business in the Apple Shops. Apple cites to *4WEB, Inc. v. NuVasive, Inc.*, No. 23-cv-00192-JRG, 2024 WL 1932416, at *1-*2 (E.D. Tex. May 2, 2024), for the proposition that employees of the defendant working at a location conducting sales, marketing, logistics, and other activities do not transform that location into a place of business of the defendant. Mot. at 15–16. In that case, the plaintiff failed to make the requisite showing because, *inter alia*, the defendant "has not represented that it has a place of business in this District" and the plaintiff "fail[ed] to point to any 'place' . . . over which NuVasive exercises possession and control." *4WEB*, 2024 WL 1932416 at *3–*4. Here, Apple does what NuVasive did not. Apple holds out the Apple Shops as its own places of business by openly displaying Apple trademarks

19

on Apple signage and allowing prospective customers to use the Apple website to locate these Apple Shops. And Apple exercises exacting control over the Apple Shops by requiring adherence to the Merchandising Guidelines discussed *supra*. The *4WEB* case merely involved employees of the defendant traveling to surgical centers and hospitals in the district to "train physicians and staff how to use the Accused Products." *Id.* at *2. Apple's Employees' regular presence at the Apple-designed Apple shops are much different than traveling medical device salespeople traveling to hospitals. NuVasive never held out to customers that the surgical centers or hospitals were their places of business, as Apple does here.

In addition to the Apple Employees that regularly visit the Apple Shops and conduct Apple's business there during the busiest shopping times of the week, Best Buy employees act as Apple's agents within the Apple Shops. An agency relationship is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. The essential elements of agency are (1) the principal's "right to direct or control" the agent's actions, (2) "the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf," and (3) the "consent by the [agent] so to act." *Meyer v. Holley*, 537 U.S. 280, 286 (2003).

Best Buy must ensure that its employees are ███████████████████████████████ These terms are defined to be ████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ ████████████████████ ████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ Best Buy is

required to ensure that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ Best Buy employees ████████████████████████████████

████████████████████ are Apple's agents. They act on Apple's behalf, selling Apple

merchandise. ████████████████████████████ and therefore has a "right to direct or

control" the agent's actions. *Meyer*, 537 U.S. at 286. These ████████ also act on Apple's behalf

in selling Apple merchandise and have consented to do so ████████████████████. *Id.*; *see*

Section II.B.5. This is different from the third-party employees who were held not to be agents of

the defendant in *In re Google*, because in that case the alleged agents were merely maintaining

equipment. The Federal Circuit held that "[m]aintaining equipment is meaningfully different

from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the

business offers." 949 F.3d at 1346. Here, the Best Buy employees do precisely what the alleged

agents in *In re Google* did not, namely furnish Apple products to customers. Dkt. 37-3, Jemmings

Decl., ¶¶ 8–10. In addition to Apple's own employees that regularly visit the Apple Shops and

conduct Apple's business there, Apple also has agents that do the same.

### 4. To Customers, Apple Shops Are No Different From Apple Stores

Apple also attempts to compare the operations of the Apple Shops in this District to the

Apple Stores that are owned by Apple and operate in other districts. Mot. at 22. Instead, Apple

compares the operations of the Best Buys to those of the Apple Stores. *Id.* ("unlike Best Buy's

stores where customers can cross-shop products made by numerous different manufacturers, Apple

Stores provide an experience focused exclusively on Apple products and related accessories.").

But the *Apple Shop* within the Best Buy is, to the customer, imperceptibly different from an Apple

Store. It looks and feels like an Apple Store, ███████████████████████████████████

██████████████████ *See* Section II.B.1. It sells only Apple products, ████████████

██████████████████ And a shopper in an Apple Shop on a weekend is just as likely

to encounter an Apple Employee conducting product demonstrations or discussing Apple products

as he is in an Apple Store. *See* Section II.B.4. In excruciating detail, the customer is deliberately

led to believe that the Apple Shop is no different than an Apple Store.

**B.      Transfer is Inappropriate Because Apple Has Not Met Its Burden to Show That California Is Clearly More Convenient**

Neither the private nor the public interest factors favor transfer. Apple did not specifically

identify any documentary sources of proof, and several party and non-party witnesses are in this

District. The judicial economy that would be lost due to the transfer of this case is significant and

weighs heavily against transfer.

**1.      The Private Interest Factors Do Not Favor Transfer**

*a.      The Relative Ease of Access to Sources of Proof Weighs Against Transfer*

This factor assesses the relative ease of access to sources of proof, including documentary

and other physical evidence. *See Volkswagen II*, 545 F.3d at 315. As the Fifth Circuit has recently

reiterated, a movant must *specifically* identify and locate sources of proof and explain their

relevance. *Defense Distrib.*, 30 F.4th at 434. Apple has not met its burden here.

Contrary to Apple's unsupported assumptions, ACT's sources of proof are located in this

District. Sharma Decl. ¶ 10. These sources of proof include documents related to the Patents-in-

Suit, documents received from the seller of the Patents-in-Suit, documents related to its prior

licenses with ████████████████████ and documents related to the sponsored research

performed by the University of Texas at Tyler. *Id.* ACT has no offices or facilities of any kind in

the Northern District of California ("NDCA"). *Id.* ¶ 11. These activities and documents cause this

factor to weigh against transfer. *Defense Distrib.*, 30 F.4th at 434 & n.25 (holding that plaintiff's activities and documents in Texas weighed against transfer).

Apple attempts, through its multiple declarations, to state that relevant documents related to the Accused Products are located in California, but fails the basic requirement of identifying with specificity what those documents are.[4] Apple uses the same boilerplate (likely attorney-drafted) language in each of its declarations, stating repeatedly that a particular team ███

███████████████████████████████████████████████████████████████████

███████████ Dkt. 37-5 ¶ 6; Dkt. 37-6 ¶ 6; Dkt. 37-7 ¶ 6; Dkt. 37-8 ¶ 6; Dkt. 37-9 ¶ 6; and Dkt. 37-10 ¶ 7. These vague and unsupported assertions cannot satisfy Apple's burden. *Defense Distrib.*, 30 F.4th at 434 ("[T]he district court erred by uncritically accepting the NJAG's conclusory assertions that 'the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey.'"); *Core Wireless Licensing, S.A.R.L.*, 2013 WL 682849, at *3 (finding statement that "virtually all [defendant] business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused Products are located in or near Cupertino" was too vague to be considered.). To the extent these records are electronic, their locations are less important. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) ("The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature."); *In re Zepp Health Corp.*, No. 2025-100, 2024 WL 4799482, at *1 (Fed. Cir. Nov. 15, 2024).

---

[4] In arguing this factor favors transfer, Apple also notes that none of its own witnesses are located in this District and that "no current members of the relevant technical or transactional teams are even located in Texas." Mot. at 25. But this factor is related to documents and physical evidence, not witnesses; therefore, the locations of witnesses should not be considered. *Jawbone Innovations, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-00186-JRG-RSP, 2022 WL 4004195, at *3 (E.D. Tex. Aug. 31, 2022).

Third party sources of proof are also located in this District and elsewhere. The Patents-in-Suit originated from JVCKenwood, located in Japan, and documents related to the invention process (as well as all of the inventors) are likely located in Japan. And the AV1 video codec, accused of infringing four of the asserted patents, was developed and is maintained by the Alliance for Open Media ("AOM"), located in Wakefield, Massachusetts. AOM's documents, including source code and the AV1 specification, are critical pieces of evidence that are located far from NDCA. And entities that upon information and belief have negotiated patent licenses with Apple, including RFCyber, Jawbone, and AGIS, are all located in this District and their records regarding those transactions are presumably located here. Ex. 6. Third parties identified by Apple itself are located in Japan, Ohio, Washington D.C., Virginia, New York City, London, Chicago, San Diego, and Shanghai, in addition to one potentially relevant third party in Palo Alto. Ex. 7. There is also at least one prior art witness, Zhongli He, located in Austin. Ex. 6. These entities and individuals likely have relevant documents and physical evidence.

Because Apple has failed to specifically identify *any* documentary and physical evidence located in this District, ACT's documents and physical evidence located in Marshall and Tyler as well as documents and physical evidence from prior Apple licensees in this District, AOM in Massachusetts as well as other third parties located around the country and across the world cause this factor to weigh against transfer.

b.     *The Availability of Compulsory Process Weighs Against Transfer*

This factor weighs against transfer because Apple fails "to identify any witnesses who would be unwilling to testify." *In re Planned Parenthood*, 52 F.4th at 630-31. Apple loosely identifies Broadcom and Qualcomm as having knowledge regarding Wi-Fi 6 and 5G chipsets sold to Apple, but merely states that these companies "are headquartered in California and their likely

witnesses are in California." Mot. at 26. Apple also never states that these unnamed Broadcom and Qualcomm witnesses would be called at trial. *Def. Distr.*, 30 F.4th at 434 (confirming that the Fifth Circuit requires specific evidence showing how the relevant proofs will be used at trial).

Even if the Court credits these unnamed Broadcom and Qualcomm witnesses allegedly located in California, there also exist significant non-party witnesses in Texas that are located within this Court's subpoena power. These include:

1) Samsung's Director of Corporate Accounting, ███████ is located in this District and has knowledge regarding the sales of Samsung products ████████████████ ████, which could be relevant to the calculation of a royalty rate and other issues related to damages.

2) AGIS, RFCyber, and Jawbone and their respective principals are believed to have previously negotiated license agreements with Apple and have knowledge regarding those negotiations. Their testimony is relevant to damages issues, as well as issues related to notice letters and potential risks of declaratory judgment actions.

3) Zhongli He, the inventor of prior art used in a previous IPR against the asserted '995 Patent. Mr. He is expected to have knowledge regarding the scope and content of this prior art, and the differences between the prior art and the invention claimed in the '995 Patent. Ex. 8.

4) Former Apple Employee, Fyodor Kyslov (now employed by Google), is located in Austin. Mr. Kyslov was a Senior Software Engineer at Apple from 2016-2018, working on video codecs (including, according to his LinkedIn profile, AV1), during the time the accused AV1 codec was being developed. Exs. 6, 9.

5) Apple has named on its Initial Disclosures ██████████████ which it states has knowledge regarding licenses and attempts to license the Asserted Patents. Ex. 7 (Apple Initial Disclosures, at 13). ██████████ has an office in Dallas, Texas, and therefore could be subpoenaed in Texas. Ex. 10. ██████████ has no presence or office in California and therefore would not be within the subpoena power of the proposed transferee court.[5]

Each of these third parties is within the subpoena power of this Court and could not be compelled to testify at trial in California. *Slyde Analytics, LLC v. Zepp Health Corp.*, No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228, at \*2–\*3 (E.D. Tex. Aug. 22, 2024) (holding that AGIS and other third parties have information regarding "potentially comparable licenses" and are located in this District, and that the availability of compulsory process weighs against transfer). Because Apple fails to identify any witnesses by name in the transferee district that would need to be compelled to testify at trial, this factor weighs against transfer.

### c. The Cost of Attendance for Willing Witnesses Weighs Against Transfer

Apple improperly counts ACT's principal, Mr. Deepak Sharma, as a witness whose costs would increase under this factor if the case remains in Texas. But Mr. Sharma operates several companies in this District, ACT maintains two offices here, and Mr. Sharma regularly travels to this District for business purposes. Sharma Decl. ¶ 12. Conducting the trial in this District would not increase Mr. Sharma's costs, because Mr. Sharma could merely schedule one of his business trips to this District to be concurrent with the trial. *Id.* Mr. Sharma could also work out of his office in Marshall during the trial, further reducing costs. *Id.* On the other hand, Mr. Sharma has no space

---

[5] ACT's position is that ██████████ has no non-privileged information relevant to this litigation. However, as Apple has named ██████████ as a potentially relevant witness, this fact weighs against transfer.

available in California that could accommodate trial preparation, and therefore the cost of trial preparation space in California would increase ACT's costs. *Id.*

██████████████, Professor of Electrical Engineering at the University of Texas at Tyler, is located in this District, and performs sponsored research related to ██████ for ACT. ██████████ has relevant information regarding ACT's development of this ████████ ████████ is a willing witness whose travel expenses would be greatly multiplied by having to travel to California. He would require a flight, instead of merely driving to Marshall from Tyler. He would also require a relatively expensive hotel instead of commuting to trial in Marshall from his home. ██████████ wrote the papers *AV1 Technical Overview – A Summary* and *A Comparative Study of the AV1 and HEVC Video Codecs* (Exs. 11 and 12). Dr. Shirvaikar may be called to testify about these papers and/or his knowledge of the performance benefits of the AV1 video codec over other available codecs, which will be a critical issue related to damages.

Apple identifies ten of its own California-based witnesses as being "most knowledgeable about each of the accused functionalities implicated by ACT's infringement allegations." Mot. at 7–10. But Apple never states that it will bring all of these witnesses to testify at trial. *See id.* at 27–28. In addition to Apple's self-selected group of California-based witnesses, Apple appears to be concealing the existence of Texas-based Apple witnesses with knowledge regarding the Accused Products who could just as easily be selected to testify at trial if not for their location. These include Graphics Software Engineer Dave Wilson Ex. 3, and SoC Design Verification specialist Afshin Nourivand Ex. 4. These individuals likely have knowledge regarding the accused software and hardware AV1 decoders/encoders in this case. Apple also admits that at least ██████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Dkt. 37-9, Pantos Decl., ¶ 5.

This unnamed employee, whose knowledge overlaps with Distinguished Engineer Mr. Pantos, would need to travel much farther from Austin to testify at the potential trial in California.

> ### d. The Practical Problems Factor Weighs Against Transfer

This favor weighs heavily against transfer because the loss of judicial economy that would occur if this case were transferred while the co-pending case against Google remains would result in duplicative efforts. This Court is already familiar with several of the Patents-in-Suit in this case by virtue of having presided over a previous litigation, which was only resolved after summary judgment briefing was completed. *In re Kia Corp.*, No. 2024-0138, 2024 WL 4355616, at *1 (Fed. Cir. Oct. 1, 2024) ("It was not clear error for the district court to consider the potential judicial economy benefit to resolving both this case and the *Toyota* case, which it noted involve 'substantially similar' accused technologies and three of the same patents."); *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("[W]e have held that a district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."). Here, as in *In re Kia*, there is a co-pending litigation against Google involving the same six patents. *Compare* Dkt. 1 (in both consolidated *Apple* cases) *with* First Am. Compl., Dkt. 23, in *Advanced Coding Techs. LLC v. Google LLC,* Case No. 2:24-00353 (E.D. Tex. Aug. 2, 2024) (both asserting U.S. Patent Nos. 8,090,025; 9,986,303; 10,218,995; 9,042,448; 8,230,101; and 7,804,891). This Court previously presided over the *LG* litigation, in which the '025, '303, and '995 patents were at issue. *Advanced Coding Techs. LLC v. LG et al.*, No. 2:22-cv-00501-JRG-RSP. Because significant judicial economy would be achieved by retaining this case in this District, this factor weighs against transfer.

### 2. The Public Interest Factors Do Not Favor Transfer

#### a. *The Local Interests Weigh Against Transfer*

Apple alleges that there is a local interest in this issue being resolved in NDCA. But Apple ignores that it has thousands of employees in Texas, and ACT has no contacts to NDCA. *See Rembrandt Wireless Techs, LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344470, at *3 (E.D. Tec. Nov. 27, 2019). Rather, the local interest in having localized interests decided at home weighs against transfer because Apple and ACT are both located in Texas. Apple's campus in Austin employs between 5,000 and 15,000 employees. Ex. 2. Compared to its approximately 12,000 employees in Cupertino, this is a significant presence. These employees perform work related to design and manufacture of the Accused Products. *See supra* Section IV.A. ACT is a Texas entity that maintains two offices in this District. Sharma Decl. ¶ 4. *In re Clarke*, 94 F.4th at 511-12.

In addition to the Plaintiff being a Texas entity and the Defendant maintaining an enormous office and production facility in Texas, there is additional local interest in this dispute because ACT's sponsored research regarding video codecs occurs in this District at the University of Texas at Tyler. Sharma Decl. ¶ 7.

#### b. *Court Congestion Weighs Against Transfer*

Apple admits that this Court's time to trial is far shorter than NDCA. Mot. at 30.[6] Apple merely argues that court congestion is speculative and entitled to little weight considering that ACT is a non-practicing entity. *Id.* But the Fifth Circuit has made clear that this factor is still relevant and that "to the extent docket efficiency can be reliably estimated, the district court is

---

[6] Statistics show that NDCA has a significantly longer time to trial and more cases per judge than EDTX. *See* Ex. 13 (NDCA averaging 48.9 months from filing to trial, compared to 21.6 months in EDTX, and 1,116 pending cases per judgeship in NDCA compared to 809 in EDTX.)

better placed to do so than [an appellate] court." *Planned Parenthood*, 52 F.4th at 631. Accordingly, this factor weighs heavily against transfer.[7]

Apple concedes that the remaining public interest factors (the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws) do not favor transfer. Mot. at 29.

### C. ACT Requests Venue Discovery

Apple appears to have intentionally withheld information that could assist the Court in deciding this Motion, including (1) not discussing with sufficient detail the frequency with which Apple Employees visit the Apple Shops in this District (Sections II.B.4 and IV A.3); and (2) █

████████████████████████████████████████████████████████████████████

(Section II.B.C. and IV.B.1.c). To the extent the Court does not infer these facts favor the Plaintiff, ACT requests venue discovery to further clarify and provide details about the scope of the relationship between Apple and Best Buy, as well as to uncover further facts relevant to the transfer analysis.

## V. CONCLUSION

For the foregoing reasons, ACT respectfully requests that the Court deny Apple's Motion to Dismiss for Improper Venue or Alternatively to Transfer to the Northern District of California (Dkt. 37).

Dated: November 18, 2024        Respectfully submitted,

                                     */s/ Peter Lambrianakos*
                                     Alfred R. Fabricant
                                     NY Bar No. 2219392
                                     Email: ffabricant@fabricantllp.com

---

[7] *See Longhorn HD LLC v. Juniper Networks, Inc.*, No. 2:21-CV-00099-JRG, 2021 WL 4243382 at *4 (E.D. Tex. Sept. 16, 2021) ("[T]he Court agrees with both Juniper and LHD that the time to trial is, on average, faster in this District. Accordingly, the Court finds this factor fairly weighs against transfer.").

Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***ADVANCED CODING TECHNOLOGIES LLC***



## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024, a true and correct copy of the above and foregoing document has been served via email on all counsel of record.

*/s/ Peter Lambrianakos*
Peter Lambrianakos