# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ADVANCED CODING TECHNOLOGIES LLC, | § § § | Case No. 2:24-cv-00572-JRG (LEAD CASE) |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| APPLE INC., | § § § | |
| Defendant. | § § | |
| ADVANCED CODING TECHNOLOGIES LLC, | § § § | Case No. 2:24-cv-00687-JRG (MEMBER CASE) |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| APPLE INC., | § § § | |
| Defendant. | § § § | |

**PLAINTIFF ADVANCED CODING TECHNOLOGIES LLC'S SUR-REPLY RELATIVE TO DEFENDANT APPLE INC.'S MOTION TO DISMISS FOR IMPROPER VENUE OR ALTERNATIVELY TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. 37)**

**TABLE OF CONTENTS**

Page(s)

I. APPLE SHOPS ARE APPLE'S PLACES OF BUSINESS ................................................ 1

    A. The Apple Shops Are Advertised on Apple's Website .......................................... 1

    B. Best Buy Is Not Merely an Independent Retailer ...................................... 1

    C. Apple Controls the Operation of the Apple Shops ................................. 2

    D. Apple's Employees Are Regularly Present at the Apple Shops ............................. 4

    E. Best Buy Employees Are Apple's Agents ................................. 5

    F. Apple Shops Are No Different From Apple Stores ................................. 6

II. APPLE HAS NOT MET ITS BURDEN TO SHOW THAT TRIAL IN CALIFORNIA IS MORE CONVENIENT ..................................................................... 6

    A. The Private Interest Factors Disfavor Transfer .......................................... 6

    B. The Public Interest Factors Disfavor Transfer ................................. 10

III. VENUE DISCOVERY IS STILL APPROPRIATE ........................................... 10

IV. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AGIS Software Dev. v. Apple, Inc.*,
    No. 2:17-cv-00516-JRG, Dkt. 76 at 4 (E.D. Tex. June 6, 2018) ..............................................7

*AptusTech LLC v. Trimfoot Co., LLC*,
    No. 4:19-CV-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020) ..............................1

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*,
    No. 2:17-cv-00418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018),
    *vacated* 2019 WL 3494359 (Aug. 1, 2019) ............................................................................1

*In re Cray*,
    871 F.3d 1355 (Fed. Cir. 2017)......................................................................................1, 2, 6

*Defense Distrib. v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ..............................................................................................6, 8

*Fractus, S.A. v. ZTE Corp.*,
    No. 2:17-cv-561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) ..............................4, 5

*In re Google LLC*,
    58 F.4th 1379 (Fed. Cir. 2023) ...............................................................................................10

*Jawbone Innovations, LLC v. Amazon.com, Inc.*,
    No.2:21-cv-00435-JRG, Dkt. 60 at 3 (E.D. Tex. Sept. 21, 2022) ...........................................7

*In re Kia Corp.*,
    No. 2024-0138, 2024 WL 4355616 (Fed. Cir. Oct. 1, 2024).................................................10

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ..................................................................................................7

*RFCyber Corp. v. Apple Inc.*,
    No. 6:21-cv-00916-ADA, Dkt. 149 at 3 (W.D. Tex. June 14, 2023) .......................................7

*Slyde Analytics, LLC v. Zepp Health Corp.*,
    No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228 (E.D. Tex. Aug. 22, 2024) ..................7, 8

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*,
    No. 2:22-cv-00490-JRG-RSP, 2024 WL 607407 (E.D. Tex. Jan. 4, 2024) ............................3

*Tinnus Enters., LLC v. Telebrands Corp.*,
    No. 6:17-cv-00170-RWS, 2018 WL 4524119 (E.D. Tex. May 1, 2018) ................................2

*In re Volkswagen Grp. Of Am., Inc.*,
    28 F.4th 1203 (Fed. Cir. 2022) .......................................................................................3, 5

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)..............................................................................................4

## I. APPLE SHOPS ARE APPLE'S PLACES OF BUSINESS

Apple and Best Buy hold out the Apple Shops as Apple's places of business to customers through the use of Apple's signage and trademarks, and Apple ratifies and controls the Apple Shops through the use of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Apple employees and Apple's agents operate the Apple Shops, which are advertised on Apple's website. Under the current case law, this is sufficient to establish that the Apple Shops are Apple's places of business.

### A. The Apple Shops Are Advertised on Apple's Website

Apple admits that the Apple Shops are advertised on Apple's website, but attempts to draw a distinction by arguing that the Apple website can be filtered to display only Apple Stores, excluding the Apple Shops. Dkt. 49 at 1. This distinction is irrelevant, as the main "find locations" tool on the Apple website clearly displays "Apple Stores and Apple Authorized Resellers" together on one list, evidencing that the customer can be directed to the Apple Shop by Apple. Mot. at 3 (citing Dkt. 1 ¶ 3.). This combined with the other facts in this case, such as the use of Apple's signage, is sufficient for the Apple Shops to be considered Apple's places of business. *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-cv-00418-JRG, 2018 WL 4849345, at *6 (E.D. Tex. Sept. 6, 2018), *vacated* 2019 WL 3494359, at *1 (Aug. 1, 2019); *In re Cray*, 871 F.3d 1355, 1363 (Fed. Cir. 2017).

### B. Best Buy Is Not Merely an Independent Retailer

The Apple Shops in this case present a different set of factual circumstances from the existing case law holding that independent retailers are not places of business of a supplier.[1] Given

---

[1] Apple argues that ACT "did not address" the case law on independent retailers, despite ACT previously noting that the situation in *AptusTech LLC v. Trimfoot Co., LLC,* No. 4:19-CV-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020) is different than the situation here because in that case the defendant "did not provide signage, furniture, or merchandising guidelines and had 'very little' input about product placement and does not 'dictate any type of display.'" Opp. at 15.

the contracts governing the relationship between Apple and Best Buy with respect to the operation of the Apple Shops, Apple's argument that Best Buy is merely an independent retailer is not credible. Apple's requirements for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ goes far beyond the activities of an independent retailer. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-cv-00170-RWS, 2018 WL 4524119, at *2 (E.D. Tex. May 1, 2018) (holding that a section inside a larger store was the place of business of defendants where defendants "hold this space out as their own, pay fees to construct the space in retail stores, and control product placement for these spaces."); *In re Cray*, 871 F.3d 1355, 1363 (Fed. Cir. 2017).

In further attempting to cast Best Buy as an independent retailer, Apple makes a critical error: relying on the other activities inside the Best Buy store to support certain aspects of its argument. *See* Reply at 2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; at 3 (contrasting displays). ACT is not presenting an argument that the *entire* Best Buy is Apple's regular and established place of business; therefore, the activities outside of the Apple Shops are irrelevant. The Apple Shops are large enough, and sufficiently controlled by Apple, to be regular and established places of business on their own.[2]

C.  **Apple Controls the Operation of the Apple Shops**

Apple attempts to deflect from the plain language of the contracts which evidence Apple's extreme level of control over the Apple Shops by arguing that this is all just "brand protection"

---

[2] Apple also states, in a footnote, without support, that Apple Stores "do not have the look and feel of Best Buy's Apple Shops." Reply at 3 n.1. Given the images of the Apple Shops that are of record (Opp. at 1), it is unclear how Apple can make this remark given that the Apple Shops have the *exact* look and feel of an Apple Store.

2

that is insufficient to establish control. Reply at 3-4. But the case law relied on by Apple, *In re Volkswagen Grp. Of Am., Inc.*, is restricted to the field of agency law. 28 F.4th 1203, 1208 (Fed. Cir. 2022) ("We hold that the dealerships located in the Western District [of Texas] do not constitute regular and established places of business . . . because [Plaintiff] has failed to carry its burden to show that the dealership are agents of [Defendants] under a proper application of established agency law.").[3] Here, ACT is not arguing that Best Buy is an agent of Apple[4] but rather that Apple itself exhibits sufficient control over the Apple Shops for them to be Apple's regular and established places of business. And while the use of Apple's logos, by itself, may not be sufficient to establish venue, the use of Apple's logos and signage in combination with the remaining facts in this case shows unambiguously that the Apple Shops are Apple's places of business.

Apple also argues that it is Best Buy, not Apple, which determines whether to have an Apple Shop and where to locate it. Reply at 3. This is false, as ███████████████████ ███████████████████████████████████████████████████████████████████████████. Additionally, the agreements define the ███████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

---

[3] The determination of an agency relationship in the context of a franchisor-franchisee relationship, as in the case of the automobile dealers in *Volkswagen*, is a fact-specific inquiry which is unnecessary given the relationship between Apple and Best Buy is not that of a franchisor-franchisee. Further, this Court has distinguished *Volkswagen* where the control evidenced in the contracts "go directly to the heart of the business in question." *Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 2:22-cv-00490-JRG-RSP, 2024 WL 607407, at *8 (E.D. Tex. Jan. 4, 2024).

[4] Except *infra* where there is clear evidence that certain Best Buy employees have been sufficiently trained by Apple to act as Apple's agents.

▇▇▇▇▇▇▇▇▇▇ Apple also does not address the case law that the ability to move the regular and established place of business is relevant to the analysis, and that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018) ("the magistrate judge did not make findings . . . whether iQor would need permission from ZTE USA to move its call center outside of the Eastern District of Texas or to stop working for ZTE USA"). Best Buy requiring ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ directly supports a finding that the Apple Shops are Apple's places of business.

**D. Apple's Employees Are Regularly Present at the Apple Shops**

Apple has submitted an additional declaration attempting to detail the presence of Apple employees at the Apple Shops, but the qualification language used therein makes the declaration impossible to use for evidentiary purposes. Dkt. 49-1 ¶¶ 4 (specialists worked an eight hour shift, "typically" 10 am to 7 pm), 5 (ASC's "generally" worked within Best Buy stores only from Thursday to Monday), 6 (Lead ASC's "often" covered between 18 and 24 retail locations). Even if this language is credited, this evidence supports ACT's position that Apple Employees are regularly in the Apple Shops[5] conducting Apple's business which includes performing product demonstrations, interacting with customers, and training Best Buy employees.

Apple claims that this Court has found a limited presence of employees insufficient to confer venue. Reply at 4 (citing *Fractus, S.A. v. ZTE Corp.*, No. 2:17-cv-561-JRG, 2018 WL 11363369, at *2 (E.D. Tex. Sept. 28, 2018)). In that case, the plaintiff was relying solely on the presence of two of the defendants' employees at a third-party call-center to establish venue. This Court held that the intermittent presence of two employees was insufficient, in part, because "there

---

[5] Apple has also stated that it "does not dispute that its employees have a limited presence at Best Buy stores in this District." Reply at 10.

is no 'ZTE signage on the building.'" *Id.* at *3. Here, such signage exists, along with a myriad of other facts not present in *Fractus*. Best Buy's use of Apple's signage and logos, as well as Apple advertising the Apple Shops on its website, in combination with the presence of Apple's employees, is sufficient to distinguish the case here from the facts of *Fractus*.

Apple also argues that, even if its employees are considered to be regularly present, this presence "alone" is not sufficient to convert the Apple Shop into Apple's place of business. Reply at 4-5. But this presupposes that ACT's venue analysis relies only on Apple's employees, which it of course does not. Apple does not cite to any case where a defendant's employees regularly visited a location that was designed specifically to look like the defendant's retail stores, carrying only the defendant's merchandise that is organized and displayed to the defendant's precise specifications, and which was advertised and locatable on the defendant's website, was held to not be the defendant's regular and established place of business. The constellation of facts in this case supports such a finding.

### E. Best Buy Employees Are Apple's Agents

The regular presence of Apple's Employees in the Apple Shops is sufficient to establish that the Apple Shops are Apple's places of business. Should the Court hold otherwise, it is clear based on the facts of record that Best Buy's employees trained by Apple to act as Apple's agents. Apple attempts to rebut this argument by relying on a statement in the Apple-Best Buy contracts



*Id.* at 5 (citing ▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As with the discussion of *In re Volkswagen*, above, Apple completely misses the mark. Best Buy's *employees*, who consent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ Opp. at 20-21.

5

### F. Apple Shops Are No Different From Apple Stores

Apple argues that ACT "improperly shifts the analysis to customer perceptions" in arguing that, to the customer, the Apple Shops are no different from Apple-owned Apple Stores. Reply at 6. Apple misreads the case law. The Federal Circuit expressly stated that when conducting a comparison of the "nature and activity" of the alleged places of business, district courts are not to "make relative value judgments on the different types of business activity conducted therein." *In re Cray Inc.*, 871 F.3d 1355, 1364 n.1 (Fed. Cir. 2017). Apple has its Apple Shops in Best Buys in judicial districts all over the country, and Apple's suggestion that the venue analysis relies on a distinction between Apple Stores and Apple Shops is not correct. Further, Apple Shops and Apple Stores are specifically designed to mirror one another in look and feel, and the perception of the customer as to who operates the regular and established place of business of the defendant is critical to the entire analysis. The considerations include "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id.* at 1363-64.

## II. APPLE HAS NOT MET ITS BURDEN TO SHOW THAT TRIAL IN CALIFORNIA IS MORE CONVENIENT

### A. The Private Interest Factors Disfavor Transfer

***Relative ease of access of sources of proof.*** Despite now having two opportunities to do so, Apple has not specifically identified any document by name that is present or accessible in California but not in Texas. Apple argues that because seven Apple employees made the same vague statements that unnamed documents are located in California, these facts should be credited. But repeating vague allegations seven times does not make them any less vague, and such conclusory assertions are not to be accepted. *Defense Distrib. v. Bruck*, 30 F.4th 414, 434 (5th Cir.

2022). By failing to specifically identify documents located in California, Apple has not met its burden. Apple also does not dispute that ACT's records are located in this District.

Apple also attempts to deflect facts that it does not like by claiming they are attorney argument that carry no weight, going so far to refer to their inclusion as "errors." Reply at 7 n.3. But Apple cannot show that third party sources of proof are not located in this District. This Court has already found that third-parties RFCyber, Jawbone, and AGIS are located in this District, and may take judicial notice of that fact. *Slyde Analytics, LLC v. Zepp Health Corp.*, No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228, at *2–*3 (E.D. Tex. Aug. 22, 2024) (holding that AGIS and other third parties have information regarding "potentially comparable licenses" and are located in this District, and that the availability of compulsory process weighs against transfer); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)[ ] motion to take judicial notice of matters of public record."). Although it is Apple's burden to show that these entities are not located in Texas, Apple has no basis to dispute that they are Texas entities, and courts have already found the same. *AGIS Software Dev. v. Apple, Inc.*, No. 2:17-cv-00516-JRG, Dkt. 76 at 4 (E.D. Tex. June 6, 2018) ("the Plaintiff, AGIS, an LLC organized under Texas law.") (Ex. 14); *RFCyber Corp. v. Apple Inc.*, No. 6:21-cv-00916-ADA, Dkt. 149 at 3 (W.D. Tex. June 14, 2023) ("Plaintiff RFCyber is a Texas corporation [] a place of business at 600 Columbus Avenue, Suite 106, Waco, Texas.) (Ex. 15); *Jawbone Innovations, LLC v. Amazon.com, Inc.*, No.2:21-cv-00435-JRG, Dkt. 60 at 3 (E.D. Tex. Sept. 21, 2022) ("Jawbone is incorporated in Texas and has its place of business at 104 East Houston Street, Suite 165, in Marshall, Texas.") (Ex. 16). Regarding the prior art author Mr. Zhongli He, public records also indicate that he currently resides in Austin. Ex. 17.

To the extent Apple argues that ACT's statements about the relevance of third parties are unsupported attorney argument, so too are Apple's statements about the relevance of third-parties Broadcom and Qualcomm. No witness from Broadcom or Qualcomm has submitted any declaration or other evidence as to their relevance here, and therefore their relevance is also speculative. This factor weighs against transfer.

**Compulsory process.** Apple chastises ACT's statements regarding third-party relevance are merely unsupported attorney argument, while relying on the same types of attorney argument to support the relevance of its own California-based third parties. At least six non-parties with potentially relevant evidence exist and can be subpoenaed in Texas: three entities that have previously negotiated patent licenses with Apple, a prior art inventor, a litigation fund, and an accountant at one of ACT's current licensees.[6] Opp. at 25-26. Two exist in California: Broadcom and Qualcomm,[7] although ACT disputes whether Apple has properly identified unnamed witnesses at these companies. *Def. Distr.*, 30 F.4th at 434.

Apple again attempts to deflect the inclusion of its prior licensees, despite ample evidence existing that these are Texas entities. *See supra* at 7. And Apple also submits, without expert testimony or any discovery, that the settlement agreements between RFCyber, Jawbone, and AGIS are "not comparable." Reply at 8. But the issue at this stage of the litigation is whether the licenses are potentially comparable, and they have already held to be so in another litigation that involved patents related to smart watches. *Slyde*, 2024 WL 3927228, at *2–*3. And in addition to technical

---

[6] This list credits Apple's statement that former Apple employee, Fyodor Kyslov, ███████████ ███████████. Dkt. 49-2, Concion Decl. ¶ 5. As this is hearsay evidence that is not from Mr. Kyslov himself, this is a rather large credit to Apple. ACT expects that, if Mr. Kyslov is deposed pursuant to any grant of venue discovery, that his testimony will reveal ███████████████████. Apple also states without support that Mr. Kyslov is potentially in San Francisco, despite his LinkedIn profile stating that he is in the "Austin, Texas Metropolitan Area." Ex. 9 at 1.

[7] Qualcomm and Broadcom also have offices in Texas and can be subpoenaed here. Exs. 18, 19.

comparability, each of these entities is a non-practicing entity and, thus, the license agreements are also likely economically comparable and can speak to, for example, Apple's willingness to enter into certain types of agreements.

Apple does not dispute that it has identified ▮▮▮▮ as a potential third-party and does not dispute that ▮▮▮▮ has an office in Texas. Apple states without support that ▮▮▮▮ "may be willing to appear" and that it should not be counted under the compulsory process factor. Reply at 8. ▮▮▮▮ is a non-party that has not indicated a willingness to appear. And, although ACT disputes ▮▮▮▮'s relevance to this case (Opp. at 26 n.5), Apple should be forced to live with its own identification of a potential witness on its initial disclosures which weighs against transfer.

Apple also attempts to minimize the relevance of Mr. Diaz, ▮▮▮▮▮▮▮▮, by stating that information related to ▮▮▮▮ "should be sought from Samsung Electronics America, based in New Jersey." Reply at 8. It is unclear how Apple can make this statement when Mr. Diaz resides and works in this District, and can be subpoenaed for this information personally in this District.

***Cost of attendance for willing witnesses.*** ACT's witnesses Mr. Sharma and ▮▮▮▮ would have their trial costs increased if this case were transferred. Although Mr. Sharma personally could travel to trial in California by car, the increased cost of trial preparation space negates this minor cost savings. Apple also has at least one witness that it admits has relevant knowledge ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 9. Although he appears to no longer work ▮▮▮▮▮▮▮▮ (▮▮▮▮▮▮▮▮), he nevertheless may have relevant knowledge regarding the benefits of ▮▮▮▮ Merely substituting the convenience of Apple's California-based witnesses for the convenience of the Texas-based witnesses is not a proper basis for transfer. This factor weighs against transfer.

***Practical problems.*** The judicial economy that would be lost by litigating substantially similar claims against the same video codecs in two different venues weighs against transfer, and failing to consider this judicial economy would be error. *In re Kia Corp.*, No. 2024-0138, 2024 WL 4355616, at *1 (Fed. Cir. Oct. 1, 2024). Apple relies on *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023), which predates *In re Kia*, and is also distinguishable because in that case both defendants had moved to transfer to California. Here, venue in the co-pending case against Google has not been challenged, and the patent-specific knowledge that this Court has gained from preparing a claim construction order in the previous cases cannot be transferred.

### B. The Public Interest Factors Disfavor Transfer

***Local interest.*** Apple disputes that its own employees can be used to satisfy the local interest factor, but tellingly does not address ACT's sponsored research in this District when discussing local interest. A Professor and a University located in this District have been and are currently performing research *specifically related to the patents in this case*, which has already resulted in two publications. Exs. 11, 12. ACT also has two offices and stores its documents here.

***Court congestion.*** Apple does not dispute that this District is less congested than the Northern District of California, merely stating without support that this factor can be ignored when the plaintiff is a non-practicing entity. Reply at 10. This factor weighs against transfer regardless of the Plaintiff's status.

### III. VENUE DISCOVERY IS STILL APPROPRIATE

Venue discovery is still appropriate, ███████████████████████████ ███████████████████████, and to further investigate the actual operation of the Apple Shops.

### IV. CONCLUSION

ACT respectfully requests that the Court deny Apple's Motion to Dismiss for Improper Venue or Alternatively to Transfer to the Northern District of California (Dkt. 37).

Dated: December 16, 2024                    Respectfully submitted,

                                                      /s/ Peter Lambrianakos
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***ADVANCED CODING TECHNOLOGIES LLC***



## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024, a true and correct copy of the above and foregoing document has been served via email on all counsel of record.

                                                  */s/ Peter Lambrianakos*
                                                  Peter Lambrianakos