# EXHIBIT 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO.  2:17-CV-00516-JRG |
| | § | |
| v. | § | |
| | § | |
| APPLE, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Apple's Motion to Transfer Venue under § 1404(a) to the Northern

District of California.  (Dkt. No. 53).  Having considered the Motion, the Court is of the opinion

the Motion should be **DENIED** for the reasons provided herein.

### I.    LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless

transfer a case based on "the convenience of parties and witnesses" to another district where the case

could have been brought. 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility

for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been

a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th

Cir. 2004) ("*Volkswagen I*"). "Any civil action for patent infringement may be brought in the

judicial district where the defendant resides, or where the defendant has committed acts of

infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC

Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the

sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco*

*Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))). For purposes of § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

 Once the initial threshold of proving the proposed transferee district is one where the suit might have been brought is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

 While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the moving defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the

plaintiff. *Id.*; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'"); *id.* at 908 (transfer under § 1404 is mandated where venue is "far more convenient and fair."). Absent such a showing, however, the plaintiff's choice is to be respected. *Volkswagen II*, 545 F.3d at 314–15. Additionally, when deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd. v. Tower Group, Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

## II.  DISCUSSION

Both Parties agree that the threshold issue of proper venue in the transferee district has been met. (Dkt. No. 53 at 8 ("This case could have properly been brought in the Northern District of California because that is where Apple resides."); Dkt. No. 57 at 7 ("[T]his suit could have been brought against Apple in the proposed transferee district")). Accordingly, the Court proceeds to the analysis of the private and public factors considered in analyzing the interests of justice under § 1404.

### A.  Private Factors

#### i.  *Relative Ease of Access to Sources of Proof*

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Apple must show that transfer to the Northern District of California will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

3

Apple submits that "Apple maintains all of its business records that are potentially relevant to this case—such as research, development and marketing materials, financial and sales data concerning the implicated products, and its patent licenses—in or near its corporate headquarters in the Northern District of California, and none in Texas."  (Dkt. No. 53 at 9 (citing Dkt. No. 53–1 at ¶¶ 14–15, 17–18, 22)).   While Apple asserts that "no relevant sources of proof appear to be meaningfully based in this District," *id.*, AGIS submits, through the declaration of its CEO, Mr. Malcolm Beyer, Jr., the following facts:

1. AGIS Inc. began a corporate restructuring plan for "business growth purposes" in 2013 which culminated in 2017 with the formation of a parent Florida corporation, AGIS Holdings, Inc., and two subsidiaries, AGIS, Inc., and the Plaintiff, AGIS, an LLC organized under Texas law.  (Dkt. No. 51-1 (Decl. of Mr. Malcolm Beyer ("Beyer Decl.") at 2)).

2. "AGIS holds assignment to each of the Patents-in-suit and licenses its patent portfolio, including the Patents-in-suit to AGIS Inc." (*Id.* at 3).

3. AGIS, Inc., has developed and sold its "LifeRing" and  "ASSIST" products over the prior 13 years and has conducted the "research, development, design, testing, manufacture, marketing, contract procurement, and sales activities" for these products in "Florida, Kansas, and Texas" and AGIS Inc's "documents and other business related records" are at those locations.  (*Id.* at 4).

4. In addition, AGIS has identified "[a]n important non-party witness . . . Eric Armstrong, a former AGIS Inc. employee who is now a consultant for AGIS," who "is responsible for designing and developing client-side and server-side software for the LifeRing and Assist solutions" and who "lives and works in Allen, Texas, in this District."  (Dkt. No.

57 at 5).  Mr. Armstrong "maintains, in this District, documents related to the design, development, and marketing of AGIS Inc. software licensed under the Patents-in-Suit." (Dkt. No. 61 at 2).

Apple contests the relevance of Mr. Armstrong's documentary evidence since "AGIS does not allege that any of its own products practice the asserted claims—and Armstrong's testimony, according to AGIS, is therefore also irrelevant."  (Dkt. No. 59 at 4).  However, as this Court noted in its order in the co-pending consolidated case *AGIS v. Huawei Device USA Inc., et al.*, "the infringement contentions do not tell the whole story." No. 2:17-cv-00513-JRG, 2018 WL 2329752, at *5 (E.D. Tex. May 23, 2018) ("*Huawei*").  As in the *Huawei* case, the relevance of Mr. Armstrong's documentary evidence lies in Apple's Answer, wherein it asserts a marking defense, arguing that damages are barred as a result of a failure to mark by AGIS. (Dkt. No. 20 at 11 ("AGIS's claims for damages is barred, in whole or in part, by 35 U.S.C. § 286 or 287.")).  Pursuant to § 287, a plaintiff may defeat a marking defense by showing either: (1) the patented articles were substantially consistently and continuously marked with the patent number during the entire period the patented articles were sold, or (2) the alleged patented articles are not patented articles within the meaning of § 287(a) because they do not meet all the elements of any of the claims of the asserted patent. *See Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) ("[O]nce marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute."); *see also, e.g., Toro Co. v. McCulloch Corp.*, 898 F. Supp. 679, 684 (D. Minn. 1995) ("A device is a 'patented article' under a patent when it contains all of the elements disclosed in any single claim of the patent."). As in *Huawei*,  "by raising § 287 as an issue to be decided in this case, [Apple] has made the issue of whether AGIS's products—or the products of its affiliated companies—are covered by the

patents in suit a central issue and of primary concern to the issue of limiting damages in this suit." *Huawei*, 2018 WL 2329752, at *5.

AGIS also attacks Apple's sources of proof.  While Apple identified its Northern California location as the location where it "maintains" all of its documentary evidence relevant to this case, (Dkt. No. 53 at 9), Apple has apparently produced its source code not in Northern California, as might be expected, but rather in New York, apparently for convenience.  (Dkt. No. 74, Hr'g Tr. at 9:3–10:9 ).[1]  Yet Apple argues it is more convenient to produce the documentary evidence for trial in Northern California.  It is not clear where this documentary evidence resides now; the Court will not speculate as to its current location or even existence.  Regardless, it demonstrates the frustration which Court regularly confronts with in determining issues of convenient venue while technology advances and the practicalities of modern litigation move forward, each straining the real-world applicability of the aging convenience tests which this Court is compelled to apply.  Even so, the Court notes that while AGIS argues that the ability of Apple to "exchange electronically" the relevant documentary evidence in this case permits the Court to ignore the location of any source of documentary evidence.  "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered."  *Implicit v. Trend Micro*, No. 6:16-cv-00080-JRG, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sep. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316).

---

[1]("THE COURT: Am I correct that Apple has already produced source code in this case?
MR.STADNICK: That is correct.
THE COURT: Tell me why it was produced in New York as opposed to Northern California.
 . . . .
MR. STADNICK: . . . [F]or the convenience of having attorneys present to monitor the source code inspection.
 . . . . [T]he main source code base is in Northern California.  I believe for purposes of convenience for the litigants and the party, for the purposes of the inspection, the relevant code was transferred to a stand-alone computer which was then transported to New York for the -- for the purposes of the inspection.")

6

Similarly, Apple's urging this Court to ignore AGIS's sources of proof in this District are equally unavailing.  While it may be true that AGIS is a newly formed Texas company, the Court inquired directly of Apple as to whether it had evidence to support its allegation of ephemeralness against AGIS during argument on this Motion; Apple pointed to, in its words, "circumstantial evidence," but conceded that it lacked "concrete evidence that the business is  actually a sham and has no real operations" in this District.  (Dkt. No. 74, Hr'g Tr. at 53-56).[2]  Accordingly, the Court will not ignore AGIS's documentary sources of proof in evaluating this factor.  Additionally, even if AGIS's sources of proof were ignored, there is no similar basis to ignore Mr. Armstrong's office's location as a primary source of documentary evidence for use in this litigation.

Accordingly, from the comparison presented above, Court finds that primary sources of proof may be found both in this District and the proposed transferee district, along with many sources of proof that are in other districts.  On balance, the Court notes the generally heavier

---

[2] (Hr'g Tr. at 53:14–54:6 (THE COURT: "But with regard to assertions of an entity being ephemeral, would you agree that that burden is not on the Plaintiff to disprove it's ephemeral, it's on you to prove that it really is material, substantive, but, in fact, ephemeral? Shouldn't you have to show me that that's what it is rather than call it that and then wait for them to disprove it?
MR. STADNICK: **I think ultimately, obviously, the burden of demonstrating that California is clearly more convenient than this court is on us.**
THE COURT: No question about that.
MR. STADNICK: I think in dealing with this specific issue of whether their contact to the district is ephemeral, to the extent the burden is on us, we've more than provided ample circumstantial evidence just given the timing, the history, and the circumstances of AG – AGIS Software's incorporation and establishment of an office here.");
*id*. at 55:24–56:5 (MR. STADNICK: "[M]y understanding of what the term ephemeral means in the cases that have used that language where the proof I believe that's cited in the opinions as to why the Court was coming to the conclusion that the presence was recent and ephemeral typically wasn't anything more than the relative timing of the establishment of the entity with the litigation.");
*id*. at 55:14–22 (THE COURT: "To me, when you make an affirmative assertion that an entity is ephemeral, you have a burden to prove that.  And perhaps that's provable with circumstantial evidence.  Perhaps it's provable with direct evidence. But anybody that raises an issue ought to carry the burden that goes with that issue and not try to raise it, and then say because they didn't disprove the[y're] ephemeral, you have to consider them such given that they were incorporated so close to the time they began the litigation.");
*id*. at 56:15–20 (MR. STADNICK: "I think I understand what Your Honor is saying, and **if Your Honor thinks it's our burden to come forth with concrete evidence that the business is actually a sham and has no real operations, we don't have admissions from their witnesses or anything of that nature that I have to offer you on that.**")
(emphasis added)

evidentiary burden with which defendants carry in patent infringement lawsuits.[3]  Taking into account the location of primary sources of proof within this District, the Court finds that this factor weighs only slightly in favor of transfer.

ii.     *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Apple argues that "most of the likely third-party witnesses of which Apple is currently aware, including an inventor and a prosecuting attorney, are likewise located in or near [the Northern District of California], strongly favoring transfer." (Dkt. No. 53 at 12.)  Specifically,

---

[3] "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citation omitted).

Apple points out that "the attorney [Mr. Daniel Burns was] responsible for prosecuting four patents-in-suit (comprising 241 of the 250 asserted claims)[, and] appears to be located in Santa Clara, California—within the subpoena power of the Northern District of California."  (*Id.*) However, as noted at argument by AGIS, "Mr. Burns is no longer an attorney at Goodwin Procter. He is now in-house as an executive at Huawei FutureWei, which is a Defendant in one of the co-companion cases. So he may very well be a party witness, and -- and I'm not even sure what he'll be able to testify to in light of the possible conflict, but it was an interesting discovery."  (Dkt. No. 74, Hr'g Tr. at 49:1–8).  Interesting indeed.[4]  There is, now, conflicting information before the Court which the Court is unsuited to resolve on this limited record.  All factual disputes must be drawn in favor of the nonmovant, requiring the Court accept that Mr. Burns is now a party witness to a consolidated defendant.  However, the Court is, at this juncture, unwilling to fully credit Mr. Burns' prospective testimony in this analysis as a third party witnesses, as his testimony may yet be challenged by the Plaintiff on conflict grounds.[5]  Further, Mr. Burns' testimony is not that of

---

[4] Evidence supporting Mr. Burns' alleged new employment was not submitted to the Court either before or following the hearing at which AGIS brought the issue to its attention.  Attorney argument is not evidence upon which this Court may rely upon, but the Court may take judicial notice of certain facts "from sources whose accuracy cannot reasonable be questioned" and properly consider such facts in its analysis. Fed. R. Evid. 201(b).  This permits the Court, where it has been made aware of a changed circumstance which may materially impact its analysis but the parties have failed to properly set such circumstance before the Court, to attempt to avoid any undue reliance on 'stale' factual bases. Accordingly, the Court takes judicial notice of the *existence* of Mr. Burns' LinkedIn profile which indicates Mr. Burns' employment as described by AGIS at argument.  *See* https://www.linkedin.com/in/danburnspatent.  The Court *does not* take judicial notice of the truth of the representations made upon Mr. Burns' profile, as such information is not "generally known within the trial court's territorial jurisdiction" nor able to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," as required by Fed. R. Evid. 201(b).  *United States v. Safran Grp.*, No. 15-cv-00746-LHK, 2017 U.S. Dist. LEXIS 137264, at *24 (N.D. Cal. Aug. 25, 2017) (declining to take judicial notice of the *substance* of a LinkedIn profile where there was a "reasonable dispute as to the reliability of the substance of [the] LinkedIn profile.").  However, the *existence* of the profile itself and its indication of Mr. Burns' employment as "Sr. Corporate IP Counsel at Futurewei Technologies, Inc." is not able to be reasonably questioned.  *See United States ex rel. Hong v. Newport Sensors, Inc.*, No. 16-55851, 2018 U.S. App. LEXIS 7683, at *2 (9th Cir. Mar. 27, 2018) (holding a district court which took judicial notice of information on a website, "not for the truth of the information" but "merely to show that [the] information was publicly available," did not abuse its discretion as "fact of the seven documents' public availability was not disputed by the parties nor 'subject to reasonable dispute.'").  Accordingly, the Court takes notice of the existence of the LinkedIn profile and the indication therein of Mr. Burns' employment as "Sr. Corporate IP Counsel at Futurewei Technologies, Inc."

[5] The Court does not suggest or prejudge this issue, merely notes that Plaintiff alluded to such a challenge at argument. (Dkt. No. 74, Hr'g Tr. at 49:7 ("I'm not even sure what he'll be able to testify to in light of the possible conflict")).

the traditional independent third party; rather, as a party witness of a consolidated defendant, his testimony is likely best considered as a result of a joint defense enterprise, coordinated by the Defendants, collectively.   The Court, in considering these complicating factors, finds that the Northern District's ability to compel Mr. Burns should be given weight but not to a great extent.

Apple also argues that "because the accused features were developed at Apple's headquarters in Northern California, any former Apple employees with relevant information are likely still located there and would continue to be subject to the subpoena power of the Northern District of California."   (Dkt. No. 53 at 12).   However, at argument on this Motion, Apple downplayed this as a strong support of transfer.  (Dkt. No. 74 at 12:14–24).[6]  The Court has, in other cases, found an "identified pool of third-party witnesses" to be "at some level, probative." *Huawei*, 2018 WL 2329752, at *6; *see also Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017) (holding that while defendant "did not point to specific witnesses they would call (so that the Court may ascertain the applicability of compulsory process over those witnesses)," defendant had, nonetheless "identified an established pool of likely third party witnesses as to whom the Northern District clearly exercises compulsory process."); *id.* (noting that "greater specificity would certainly strengthen [defendant's] position" but that the showing was "relevant" and "at some level, . . . probative.").   However, the pool of witnesses which Apple has identified in support of its motion is *far* more speculative than the pool identified in those types of cases.   As opposed to identifying potential third-party witnesses *currently employed* by, for example, component manufacturers or application developers upon

---

[6] ("THE COURT: There's some talk in the briefing about you may have former employees, and if you do have former employees and if they are relevant witnesses, then you assume that they're still going to be in Northern California. That looks to me, at least as to that component of this, looks like it's speculation upon speculation, and I assume you don't really disagree with that.
MR. STADNICK: It's certainly not the crux of our argument, and I wasn't planning on pushing on that aspect of the potential witnesses here today.").

whom the party defendant relies in manufacturing the accused device or practicing the accused method, Apple points to a favorable geographic region as the "likely [] locat[ion]" of "any former Apple employees with relevant information."  This is speculation on speculation and not sufficient to weigh in favor of transfer.

AGIS identifies two third-party witnesses: Eric Armstrong, AGIS's consultant, located in this District, and AGIS's technical expert, Joseph C. McAlexander, located nearby in Richardson, Texas.  (Dkt. No. 57 at 9).  As discussed above, Mr. Armstrong's evidence has been shown to be relevant and his presence weighs against transfer, as he is subject to this Court's subpoena power but lies beyond the subpoena power of the Northern District of California.  As to Mr. McAlexander, however, as an expert witnesses, he properly counts as a willing witness and is considered under the third factor.  *See  Huawei*, 2018 WL 2329752, at *3 ("Access to witnesses for presentation at trial, which is the purpose of the venue transfer analysis, is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.") (citation omitted).

The Court, thus, finds that the only identified third-party witnesses properly considered under this factor are Mr. Armstrong and Mr. Burns.  The Court emphasizes that all parties carry a duty to present to the Court more than suppositions and assumptions, reasonable or not.  The Court is restrained in its analysis by precedent and *must* support its findings and conclusions underlying its fact-intensive inquiry into the relative convenience of the parties in presenting their cases at trial with more than a scintilla of evidence here and a wisp of supposition there.  Apple has presented no substantive evidence under this factor as to its former employees, nor did Apple present any rebuttal to AGIS's report of Mr. Burns' change in employment.  The Court also found it appropriate, for the reasons discussed above, to give the Northern District's ability to compel Mr. Burns less weight under this factor given

his potential irrelevance and quasi-party witness status.  Additionally, while, in its reply Apple raised, for the first time, the presence of "thirteen named inventors of patents relied upon by Apple in its invalidity contentions are located in the Northern District of California" the Court cannot help but find this speculative and of little consequence.  In doing so, the Court considers when these supposed witnesses were first identified, Apples' admission at argument that "one or two *might*" testify at trial, that "a couple of these individuals *might* be relevant at trial," and Apple's representation that their investigation into the relevance of these individuals is ongoing and "*depending* on how that goes, there is, you know, at least a *good possibility* that [the location of these individuals] should be afforded some weight." (Dkt. No. 74, Hr'g Tr. at 26:6; 26:17–18; 26:14–16).  Accordingly, the Court finds this factor to weigh against transfer.

### iii.  Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick*

*v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

First, the Court addresses the deferred consideration of Mr. McAlexander from above.  The Court has not had much cause to consider expert witnesses in its analysis of § 1404 motions. However, on survey of Fifth Circuit precedent, the Court finds a variety of approaches.  *Compare MedioStream, Inc. v. Acer Am. Corp.*, No. 2:07-cv-376, 2008 U.S. Dist. LEXIS 74066, at *10 (E.D. Tex. Sep. 26, 2008) ("The convenience of expert witnesses is generally accorded little weight in the transfer analysis."), *Q W. Energy v. GE*, No. 3:98-cv-1491-P, 1998 U.S. Dist. LEXIS 19771, at *6 (N.D. Tex. Dec. 1, 1998) (same), and *Ducote v. Cenac Towing Co.*, No. G-06-211, 2006 U.S. Dist. LEXIS 52722, at *8 (S.D. Tex. July 13, 2006) ("[T]he testimony of an expert witness can be compelled at trial and thus the convenience of experts is also given relatively lesser weight."), *with Aloft Media, LLC v. Adobe Sys.*, No. 6:07-cv-355, 2008 U.S. Dist. LEXIS 23601, at *20 (E.D. Tex. Mar. 25, 2008) ("Finally, a patent trial often revolves around the strength of expert witness testimony, and many experts are also non-party witnesses"), *Mortensen v. Maxwell House Coffee Co.*, 879 F. Supp. 54, 56 (E.D. Tex. 1995) ("The vast majority of the witnesses, **both fact and expert**, reside in the Southern District. None reside in the Eastern District. The Southern District forum, therefore, offers lower costs for obtaining witnesses and other trial expenses."), *Cypress Drilling, Inc. v. Griffin*, No. 06-0556, 2006 U.S. Dist. LEXIS 52405, at *10 (W.D. La. July 31, 2006) (considering convenience of expert witness), and *Verde v. Stoneridge, Inc.*, No. 6:14-cv-157, 2014 U.S. Dist. LEXIS 197637, at *13 (E.D. Tex. Aug. 25, 2014) (same).  Accordingly, the Court finds it appropriate to give Mr. McAlexander's convenience little weight, but not no weight.

Moving on, Apple submits that "[a]ll of Apple's potentially relevant witnesses related to the research, development, and marketing of the accused software features are located in the Northern District of California" including "all seven of the Apple employees believed to have information relevant to this case are located in the Northern District of California." (Dkt. No. 53 at 10–11). As Apple noted at argument, however, "the way these cases work, if we get to trial, there's going to be one or maybe two technical fact witnesses and probably one fact person on the damages side of things." (Dkt. No. 74, Hr'g Tr. at 20:8–11).

AGIS identifies "its key party witnesses at trial to include Mr. Beyer (Jupiter, Florida), Mr. Seitsema (Austin, Texas), and Sandel Blackwell (Lenexa, Kansas)." (Dkt. No. 57 at 9). AGIS notes that the Eastern District of Texas "is a more convenient venue for each of them than the Northern District of California," and also emphasizes that "[u]nlike Apple, AGIS is a small business, AGIS's party witnesses' absence will create severe hardships to AGIS's ability to do business while Apple would likely have no such issues if its witnesses were required to travel to Texas to testify." *Id*.

The Court finds that this factor weighs in favor of transfer, but not to a great extent. First, all of the identified witnesses aside from Mr. McAlexander are party witnesses, whose convenience is given diminished weight. "[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012) (citation omitted). Even so, while the Eastern District may be more convenient for AGIS's witnesses, none reside in the District, so their inconvenience is a relative one, rather than an objective one, as extensive travel is required for trial in either locale. Mr. McAlexander is most conveniently located to this District but his status as an expert witness entitles him to diminished

weight as well.  In total, the Court's determination that this factor weighs in favor of transfer, but not to a great extent, is the appropriate conclusion.

       *iv.*    *All Other Practical Problems*

    Apple identifies no practical problems with either district.  (*See generally* Dkt. No. 53 at 13) (summarizing other factors' alleged favor of transfer but not identifying practical problems in either district).  The Court interprets this silence as Apple proposing this factor to be neutral.  AGIS argues that judicial economy presents a distinct basis which disfavors transfer as "[p]arallel actions on the same four patents-in-suit are presently pending against Huawei, LG, ZTE, and HTC in this Court" and that "adjudication of all five actions by this Court, rather than in duplicative suits in multiple jurisdictions serves the interests of judicial economy and weighs heavily against transfer." (Dkt. No. 47 at 12).

    Not so. As this Court has noted previously, "certain cases warn against giving excessive weight" to consideration of copending cases in evaluating judicial economy under § 1404.  *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sep. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)).  However, "consideration to the existence of copending cases is not foreclosed." *Oyster Optics*, 2017 U.S. Dist. LEXIS 155586, at *22.  "Rather, *In re Google* indicates that courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any 'double count' in according proper weight."  Id. at *22–23.

    As in *Huawei*, in every copending case that AGIS points to, a motion to transfer venue and/or dismiss for improper venue has been filed. (See Dkt. No. 53; 2:17-cv-513, Dkt. No. 36; 2:17-cv-514, Dkt. No. 29; 2:17-cv-517, Dkt. No. 38). Accordingly, the Court does not consider any of the copending cases in evaluating the judicial economy of retaining the action under this

factor. With no separate basis to support judicial economy or some other practical problem which would result from transfer, AGIS's position is rebuffed and Apple's apparent contention that this factor is neutral is, in the Court's opinion, correct. Accordingly, the Court finds this factor is neutral.

### B.  Public Factors

#### i.   *Administrative Difficulties Flowing From Court Congestion*

Apple submits that this factor is neutral.  (Dkt. No. 53 at 15 ("Transfer of this case to the Northern District of California presents no administrative difficulties flowing from court congestion or other issues.")).  Apple points to weighted filings per judge over three years old in this District (6.8%) and the Northern District of California (6.4%) in support of its argument that "transfer of this case may help to alleviate docket congestion here."  (*Id.*)  First, the Court notes that, as the Administrative Office explains, "[d]ata for cases pending more than three years may not match those presented in the Civil Justice Reform Act (CJRA) reports because the profiles presented herein include data for cases on appeal in other courts (i.e., the Supreme Court, courts of appeals, other district courts, and state courts), whereas the CJRA reporting guidelines exclude such data."  *See* Explanation of Selected Terms, *available at http://www.uscourts.gov/sites/ default/files/explanation_of_selected_terms_september_2015_0.pdf*.  The Court is pleased to report that *its* most recent CJRA Report (submitted to the Administrative Office, publication forthcoming), which is the report relevant to this inquiry, reported zero cases pending more than three years, while its earlier, but published, statistics indicate only two cases pending so long.  *See* September 2017 CJRA Report, *available at http://www.uscourts.gov/sites/default/files/ data_tables/cjra_na_0930.2017.pdf*.

Regardless, as AGIS points out, the relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  As the U.S. District Courts Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During 12 Month Period Ending March 31, 2017 indicates, the median time for cases to go from filing to trial in the Northern District of California is 25.4 months, compared to 21.4 months in this District. *Available at* http://www.uscourts.gov/sites/ default/files/data_tables/fjcs_c5_0331.2017.pdf.  Accordingly, this factor weighs against transfer.

### ii. *Local Interest in Having Localized Interests Decided at Home*

Apple submits that "[t]he Northern District of California has a strong local interest in this dispute," as "Apple's headquarters have been located in the Northern District of California since its founding in 1976, and the employees involved in the research, design, and development of the accused software features are located in that District."  (Dkt. No 53 at 14).  Accordingly, Apple argues, "the vast majority of identified witnesses, evidence, and events are located in the transferee venue," and, thus, "this factor favors transfer."  (*Id*. (quotation omitted)).

AGIS argues that "AGIS is a Texas entity with a principal place of business, full-time employees and a consultant located in and around this District," and that "[i]ts founder and CEO has longstanding personal and business ties to this District."  Dkt. No. 57 at 13.  Further, the Declaration of AGIS's CEO, Mr. Malcolm Beyer, indicates that AGIS began a corporate restructuring plan in 2013 culminating in the current corporate structure's formation in 2017, with Texas being selected as the place of establishment for AGIS "because of [Mr. Beyer's] previous successful business operations in Texas and because of [his] longstanding personal connections to Texas."  (Dkt. No. 57-1 at ¶ 7).  Additionally, AGIS points out that "AGIS has absolutely no ties or connections to the state of California."  (Dkt. No. 74, Hr'g Tr. at 42:8–9).

There is little doubt that the Northern District of California has a local interest in the disposition of any case involving Apple.  However, there can be equally little doubt that this District has a local interest in the disposition of any case involving a resident corporation.  Given AGIS's principal place of business in this District, it is a resident.  *In re BigCommerce, Inc.*, No. 2018-120, 2018 WL 2207265, at *5 (Fed. Cir. May 15, 2018) (holding that "the judicial district where the principal place of business is located" is the district in which it "resides" for venue purposes in a multi-district state).  Apple urges this Court inquire as to the relative "strength" of the local interests.  The Court questions the appropriateness of that inquiry.[7]  If followed to its conclusion, smaller businesses and individual plaintiffs will *always* be disfavored by this factor, as the interest their communities may have is small when compared to the interest a distant community may have in its hometown corporate pillar.  This does not accord with foundational principles of justice.  *See, e.g.*, Fifth Circuit Pattern Jury Instructions (Civil Cases) § 2.16 ("A corporation and all other persons are equal before the law and must be treated as equals in a court of justice."); *Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, No. 4:10-CV-081, 2014 WL 11531554, at *16 (D.N.D. July 16, 2014) ("All persons are equal before the law and companies or corporations, big or small, are entitled to the same fair consideration . . . .").

Accordingly, as both Parties are resident corporations of their respective home districts, both home districts have interests in the disposition of this case; the Court finds this factor to be neutral.

### iii.  *Familiarity of the Forum with Governing Law*

The Parties agree that this factor is neutral.  (Dkt. No. 53 at 15; Dkt. No. 57 at 15).  The Court agrees and finds this factor to be neutral.

---

[7] (Dkt. No. 74, Hr'g Tr. at 51:4–14 ("THE COURT: Well, how do we compare that residents in this district to Apple in the Northern District of California? It's not numbers of employees versus numbers of employees. Is it impact on the local economy versus impact on the local economy? Is it presence in the community measured in some way, and I'm not sure how to measure what the real presence is? One person here proportionately is a much larger impact than one person there because their population is so much greater. How -- how is the Court supposed to navigate all these possibilities in determining local interest?")).

18

      *iv.*    *Avoidance of Unnecessary Conflicts of Law*

The Parties agree that this factor is neutral.  (Dkt. No. 53 at 15; Dkt. No. 57 at 15).  The Court agrees and finds this factor to be neutral.

## III.   CONCLUSION

Having considered the relevant factors,[8] the Court is of the opinion that Apple has not met its significant burden to show that the asserted transferee district is "clearly more convenient."  *In re Apple Inc.*, 456 F. App'x at 909.  This is, rather, a case where "the defendants have shown nothing more than that a transfer would shift any possible inconvenience from the defendants to the plaintiff."  *Cypress Drilling, Inc. v. Griffin*, No. 06-0556, 2006 U.S. Dist. LEXIS 52405, at *10 (W.D. La. July 31, 2006); *accord Frederick*, 558 F. Supp. 2d at 703 (quoting *Enserch Int'l Expl., Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987)) ("The court should not transfer venue where the result will be merely to shift the expense and inconvenience from one party to the other.").  For the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (Dkt. No. 53).

      **So ORDERED and SIGNED this 6th day of June, 2018.**

                               RODNEY GILSTRAP
                               UNITED STATES DISTRICT JUDGE

---

[8] Summary of factor holdings: (i) access to proof: "slightly in favor of transfer"; (ii) availability of compulsory process: "against transfer"; (iii) cost and attendance for willing witnesses: "weighs in favor of transfer, but not to a great extent"; (iv) practical problems: "neutral"; (v) court congestion: "slightly against transfer"; (vi) local interest: "neutral"; (vii) familiarity with the law: (agreed) neutral; (viii) conflict of laws: (agreed) neutral.